E-FILED
Friday, 07 April, 2006  12:13:12 PM
Clerk, U.S. District Court, ILCD

**Defendant Conair Corporation's Response in
Opposition to Plaintiff's Motion for Enlargement of Time**

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | |
|---|---|
| SHARON JACKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 04-2230 |
| | ) |
| CONAIR CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S INITIAL RULE 26(a)(1) DISCLOSURES

NOW COMES Plaintiff, SHARON JACKS, by and through her attorneys, KLECZEK LAW OFFICE, and pursuant to the Federal Rules of Civil Procedure, Rule 26(a)(1) and Local Rule 26.2, makes the following disclosures:

**I.     Rule 26(a)(1)**

A.     The name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information.

**DISCLOSURE**

1.     Sharon Jacks, 1231 Cypress, Rantoul, IL 61866.

2.     Kenneth Jacks, 1231 Cypress, Rantoul, IL 61866.

3.     Dr. Kenneth Kattner, Central Illinois Neuro Health Sciences, 1015 S. Mercer, Bloomington, Illinois.

4.     All personnel working with Dr. Kattner.

Investigation continues.

**II.     Rule 26(a)(1)**

B.     A copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody,

1

or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.

**DISCLOSURE**

1.    All records relating to Sharon Jacks job search efforts after her termination from Conair Corporation.

2.    All records relating to the care and treatment of Kenneth Jacks, specifically as it relates to the June 6, 2003 FMLA notice delivered to Defendant.

3.    Wage statements relating to Sharon Jacks from Conair Corporation for income tax returns relating to Sharon Jacks.

**III.    Rule 26(a)(1)**

C.    A computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

**DISCLOSURE**

A computation of damages Sharon Jacks is seeking consists of accrued and accruing lost wages and other benefits, plus costs and attorneys fees, which continue to accrue.

SHARON JACKS,
Plaintiff,

By: _____
DAVID A. KLECZEK

**KLECZEK LAW OFFICE**
**321 N.E. Madison Ave.**
**Peoria, Illinois 61603**
**Telephone: (309) 674-4141**
**Facsimile: (309) 674-4144**

2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **PLAINTIFF'S INITIAL RULE 26 DISCLOSURES** was served upon the attorneys of record in this matter by depositing copies of same enclosed in envelopes addressed as follows:

J. Stuart Garbutt
Meckler, Bulger, & Tilson
123 N. Wacker Drive Suite 1800
Chicago, Illinois 60606

and by depositing said envelopes with first-class postage fully prepaid in the U.S. Mail at Peoria, Illinois on the 31st day of January, 2005.

Denise A. Christensen

3

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

SHARON JACKS,                           )
                                        )
        Plaintiff,                )
                                        )
v.                                      )          Case No. 04-2230
                                        )
CONAIR CORPORATION,                     )
                                        )
        Defendant.                )

---

### NOTICE OF SERVICE OF DISCOVERY DOCUMENTS

---

    The undersigned certifies that a true and correct copy of the following document(s), along with a copy of this Notice of Service of Discovery Documents was sealed in a postage prepaid envelope addressed as set forth above and deposited in the U.S. Mail at Peoria, Illinois on the 31st day of January, 2005.

### PLAINTIFF'S INITIAL RULE 26(a)(1) DISCLOSURES

                                      RESPECTFULLY SUBMITTED,
                                        s/ DAVID A. KLECZEK
                                        David Kleczek Bar Number:  6276591
                                        Attorney for Plaintiff
                                        KLECZEK LAW OFFICE
                                        321 N.E. Madison Ave.
                                        Peoria, Illinois 61603
                                        Telephone: (309) 674-4141
                                        Facsimile: (309) 674-4144
                                        E-mail: dkleczek@netzero.com

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | |
|---|---|
| SHARON JACKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 04-2230 |
| | ) |
| CONAIR CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: J. Stuart Garbutt of Meckler, Bulger & Tilson and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: N/A

RESPECTFULLY SUBMITTED,
s/ DAVID A. KLECZEK
**David Kleczek Bar Number: 6276591**
**Attorney for Plaintiff**
**KLECZEK LAW OFFICE**
**321 N.E. Madison Ave.**
**Peoria, Illinois 61603**
**Telephone: (309) 674-4141**
**Facsimile: (309) 674-4144**
**E-mail: dkleczek@netzero.com**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| SHARON JACKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-2230 |
| | ) | |
| CONAIR CORPORATION, | ) | Judge Michael P. McCuskey |
| | ) | Magistrate Judge David G. Bernthal |
| Defendant. | ) | |

## CONAIR CORPORATION'S RULE 26 INITIAL DISCLOSURES

Pursuant to Fed. R. Civ. P. 26(a)(1) and Local Rule 26.2, Defendant Conair Corporation ("Conair"), by and through its attorneys, Meckler Bulger & Tilson LLP, makes the following preliminary disclosures:

### Rule 26(a)(1)(A)

Conair believes that the following individuals are likely to have discoverable information:

Sharon Jacks, Plaintiff
1231 Cypress
Rantoul, IL 61866

Plaintiff should have discoverable information regarding her absences from work, the events and circumstances leading to the termination of her employment, and her efforts if any to mitigate her damages.

Kenneth Jacks
1231 Cypress
Rantoul, IL 61866

Mr. Jacks, the Plaintiff's husband, will likely have discoverable information regarding his alleged medical condition in or about June 2003 that the Plaintiff claims qualified her for leave under the Family and Medical Leave Act.

Dr. Keith A. Kattner, D.O.
Central Illinois NeuroHealth Sciences
1015 S. Mercer Ave.
Bloomington, Illinois 61701

Dr. Kattner, Mr. Jacks' treating physician, and perhaps other personnel with his office, will likely have discoverable information regarding Mr. Jacks' alleged medical condition in or about June 2003 that the Plaintiff claims qualified her for leave under the Family and Medical Leave Act.

> Stephanie Burris
> Human Resource Manager
> Conair Corporation
> 205 Schoolhouse Road
> Rantoul, IL

Ms. Burris has discoverable information regarding the facts and circumstances leading to Plaintiff's termination.

## Rule 26(a)(1)(B)

Categories of Documents, data compilations and tangible things in Conair's custody that are potentially relevant to disputed facts raised in the pleadings include:

1.  Plaintiff's personnel and payroll records and records pertaining to her discharge.
2.  Documents pertaining to Plaintiff's request for time off under the Family and Medical Leave Act.
3.  Documents pertaining to Conair's employee attendance policy.

## Rule 26(a)(1)(C)

Conair anticipates seeking to recover its reasonable costs and attorney's fees expended in defending this action. Conair cannot presently calculate those costs as they will continue to accrue as long as the litigation remains pending.

2

**Rule 26(a)(1)(D)**

Not applicable.

Respectfully submitted,

Date:  February 7, 2005

One of the Attorneys for Defendant
CONAIR CORPORATION

J. Stuart Garbutt
Joseph E. Tilson
Meckler Bulger & Tilson LLP
123 N. Wacker Drive, Suite 1800
Chicago, Illinois  60606
(312) 474-7900 – Telephone
(312) 474-7898 – Facsimile

N:\4161\discover\Rule 26 Disc.doc

3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

SHARON JACKS,                          )
                                       )   Case No. : 04-2230
                Plaintiff,             )
                                       )   Judge Michael P. McCuskey
        v.                             )   Magistrate Judge David G. Bernthal
                                       )
CONAIR CORPORATION,                    )
                                       )
                Defendant.             )

## NOTICE OF FILING

TO:    David A. Kleczek
       Kleczek Law Offices
       321 NE Madison
       Peoria, IL 61603

       PLEASE TAKE NOTICE  that on February 7, 2005, we filed electronically with the
Clerk of the United States District Court for the Central District of Illinois, Urbana Division,
which will send notification of such filing electronically to you, the following certificate of
service:

### CERTIFICATE OF SERVICE

       I, J. Stuart Garbutt, an attorney, certify that on February 7, 2005, I caused to be served the
above stated documents upon the individual to whom the Notice is directed by enclosing a copy
in a properly addressed envelope, postage prepaid, and depositing same in the United States Mail
a 123 North Wacker Drive, Chicago, Illinois.

                                    _____
                                    One of the attorneys for Defendant Conair Corp.

J. Stuart Garbutt
Meckler Bulger & Tilson LLP
123 North Wacker Drive
Chicago, Illinois  60606
Tel:    312/474-7900
Fax:    312/474-7898

N:\4161\pleading\nof001sg.doc

**Defendant Conair Corporation's Response in
Opposition to Plaintiff's Motion for Enlargement of Time**

# EXHIBIT B



Page 1

```
 1           UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF ILLINOIS
 2                  URBANA DIVISION
 3
 4   SHARON JACKS,          )
                            )
 5      Plaintiff,          )
                            )
 6      -vs-                )  No. 04-2230
                            )
 7   CONAIR CORPORATION,    )
                            )
 8      Defendant.          )
 9
10
11
12        THE DISCOVERY DEPOSITION of SHARON S.
      JACKS, the plaintiff herein, called by the
13    Defendant for examination pursuant to agreement and
      pursuant to the provisions of the Code of Civil
14    Procedure and the Rules of the Supreme Court
      thereof pertaining to the taking of depositions,
15    taken before me, Jill A. Bleskey, CSR-RPR, License
      No. 084-004430, a Notary Public in and for the
16    State of Illinois, at Brookens Administrative
      Building, 1776 East Washington Street, in the City
17    of Urbana, County of Champaign, and State of
      Illinois on the 17th day of January, A.D., 2006,
18    commencing at 9:00 a.m.
19
20   ---------------------------
21            Jill A. Bleskey, RPR
              CSR #084-004430
22
23
```

**ORIGINAL**

Page 2

```
 1               APPEARANCES
 2   For the Plaintiff:
 3   LAW OFFICES OF DAVID KLECZEK
        Attorneys at Law
 4      321 N.E. Madison Avenue
        Peoria, Illinois 61603
 5      (309)674-4141
        BY: Mr. David Kleczek
 6
     For the Defendant:
 7
     MECKLER, BULGER & TILSON, LLP
 8      Attorneys at Law
        123 North Wacker Drive, Suite 1800
 9      Chicago, Illinois 60606
        (312)474-7909
10      BY: Mr. J. Stuart Garbutt
11
                   INDEX
12
     EXAMINATION CONDUCTED BY:      PAGE:
13
     Mr. Garbutt           3
14
15             INDEX OF EXHIBITS
16   EXHIBIT NUMBER            PAGE
17   1 - Employment Application      18
     2 - House, Attendance and Safety
18       Rules                       23
     3 - 12-8-02 Final Warning   26
19   4 - 4-23-04 Final Warning   27
     5 - 5-5-03 Written Warning  27
20   6 - FMLA Certification of Health Care
         Provider                    55
21
22   NOTE: Exhibits attached to transcripts
23
```

Page 3

```
 1                SHARON S. JACKS,
 2        The witness, having been first duly
 3    sworn upon her oath, testified as follows:
 4           EXAMINATION CONDUCTED
 5           BY: MR. GARBUTT
 6     Q.    Will you state your name for the
 7    record, please?
 8     A.    Sharon Jacks.
 9     Q.    Is there a middle name?
10     A.    Sue.
11     Q.    Sue?
12     A.    (Witness nods head.)
13     Q.    My name is Stu Garbutt, I'm one of
14    the attorneys for Conair Corporation --
15     A.    Uh-huh.
16     Q.    -- in this lawsuit you've brought
17    against Conair. Let the record show that this is
18    the deposition of Sharon Jacks taken pursuant to
19    the rules of the Illinois Code of Civil Procedure
20    and by agreement of the parties. I'm going to be
21    asking you some questions about the lawsuit that
22    you've brought and what you know about the
23    circumstances underlying that lawsuit.
```

Page 4

```
 1        If at any point you don't -- you
 2    can't hear any question or you don't understand me
 3    please ask me to clarify it or repeat it so that
 4    you can hear me. And if you would, I'm going to be
 5    asking you to answer everything audibly and to wait
 6    until I'm finished asking the question before you
 7    begin to state your answer so that both of us don't
 8    talk at the same time; --
 9     A.    Okay.
10     Q.    -- is that okay?
11     A.    Okay.
12     Q.    Now, you were born October 15th,
13    1956; is that correct?
14     A.    Right.
15     Q.    Where were you born?
16     A.    Champaign.
17     Q.    Right here in Champaign?
18     A.    Champaign.
19     Q.    Have you lived in Champaign all your
20    life?
21     A.    Yes.
22     Q.    And your Social Security number is
23    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?
```

1 (Pages 1 to 4)



Page 57

1    THE WITNESS: No, I didn't write...
2    MR. KLECZEK: And eight it looks like
3    the same handwriting as four.
4    THE WITNESS: No, I didn't write
5    that.
6    BY: MR. GARBUTT
7    Q.    You didn't write what's written under
8    Paragraph 4 on the first page?
9    A.    I don't think I did.
10    Q.    And under Paragraph 5A, the
11    handwriting under there, you don't think that is
12    your handwriting either?
13    A.    I don't believe so.
14    Q.    But under 8A on the second page, do
15    you think that that's something that you wrote
16    yourself as opposed to someone in the doctor's
17    office?
18    A.    Looks like my writing, yeah.
19    Q.    Do you remember writing it?
20    A.    I don't remember for sure writing it,
21    no. I believe I did.
22    Q.    Is there anything else on Page 2 of
23    the form that you think you may have written?

Page 58

1    There's a signature --
2    A.    My signature.
3    Q.    You signed your name there, --
4    A.    Yes.
5    Q.    -- employee signature?
6    A.    Yes.
7    Q.    And how about the date next to that,
8    did you write that?
9    A.    Yes.
10    Q.    What is that date that's written
11    there?
12    A.    Looks like 6 of '03. I started to
13    write five but it was 6 of '03.
14    Q.    So the six refers to the month of
15    June, correct?
16    A.    Right.
17    Q.    And '03 obviously is the year 2003?
18    A.    Right.
19    Q.    You left the actual date within the
20    month of June vacant?
21    A.    Right. Evidently I wasn't sure of
22    the date.
23    Q.    All right. So at the time you took

Page 59

1    this form with you to -- on Kenny Jacks' visit to
2    Dr. Katner, had you already filled out these
3    portions you just described to us?
4    A.    No. I filled it all out there while
5    at the doctor's office.
6    Q.    You filled it out while you were at
7    Dr. Katner's office?
8    A.    Yes, sir.
9    Q.    Did you see anybody else at the
10    doctor's office fill anything else on the form --
11    A.    No, sir.
12    Q.    -- before you left?
13    A.    No, sir.
14    Q.    So when you left the form with Dr.
15    Katner's office it contained just the sections that
16    you've testified --
17    A.    Right.
18    Q.    -- today you filled out?
19    A.    Right. She -- I believe she had told
20    me that they was busy at that time and she would
21    turn it over to the woman that handled the
22    paperwork.
23    Q.    And who is this she that you're

Page 60

1    referring to?
2    A.    The nurse.
3    Q.    Do you know what her name was?
4    A.    No, I'm not sure.
5    Q.    And did she indicate to you who the
6    person was who she was going to turn the form over
7    to?
8    A.    I don't remember, no. She may have
9    used a name but I don't remember.
10    Q.    Now, you did not take the completed
11    FMLA medical certification form back to Conair, did
12    you?
13    A.    No. She told me she would fax it.
14    Q.    She being this person --
15    A.    The nurse.
16    Q.    The nurse?
17    A.    Yes. I'm thinking at that time I was
18    supposed to have been under a certain time of
19    having -- needing to get it back in to Stephanie.
20    So she said that she would fax it, that she had 24
21    hours to fax the paperwork to Stephanie.
22    Q.    Did you actually speak to Dr. Katner
23    during this visit to his office on June --

15 (Pages 57 to 60)

SHARON S. JACKS, JANUARY 17, 2006

Page 61

1    A.    I was --
2    Q.    -- 5th?  Pardon me?
3    A.    I was in the room with him, yes,
4  while he examined him.
5    Q.    You were in the room while Dr. Katner
6  examined Kenny?
7    A.    Yes, sir.
8    Q.    Did you discuss with Dr. Katner that
9  you wanted an FMLA medical certification form
10  filled out?
11    A.    He said the nurse would take care of
12  that.
13    Q.    So you told him you needed the form
14  filled out?
15    A.    Yes, sir.
16    Q.    He said his nurse would take care of
17  that?
18    A.    (Witness nods head.)
19    Q.    Was it after that conversation with
20  Dr. Katner that you and the nurse -- that you
21  filled out the portions that you've described here
22  today?
23    A.    Yes, sir.

Page 62

1    Q.    And then you left it with the nurse?
2    A.    Yes, sir.
3    Q.    And she told you she was going to
4  turn it over to whoever's in charge of the
5  paperwork?
6    A.    Right.
7    Q.    Do you know when Dr. Katner's office
8  -- strike that.  Do you know for a matter of fact
9  that Dr. Katner's office did fax the medical
10  certification form to Conair?
11    A.    No.  I guess I don't know for a
12  matter of fact.  I mean, she told me she would fax
13  it to Conair.
14    Q.    So I take it you don't know when they
15  faxed it to Conair?
16    A.    No, sir.
17    Q.    Did you ever discuss the medical
18  certification form with Stephanie Burris of Conair?
19    A.    I believe that following Monday I
20  called to make sure that the paperwork was all
21  straightened out.  Because he hadn't gotten any
22  better, he was still in -- needing me to be there
23  to help him to get up, to sit down, to lay down, to

Page 63

1  whatever, get around.
2    Q.    So you think the following Monday?
3  Now, this would have been Monday, June 9th, right?
4    A.    Right.
5    Q.    You think on that Monday you
6  called --
7    A.    Right.
8    Q.    -- Stephanie Burris?
9    A.    Uh-huh.
10    Q.    What time did you call her?
11    A.    Sometime before my shift would have
12  started.
13    Q.    Sometime before 3:45 in the
14  afternoon?
15    A.    Uh-huh.
16    Q.    All right.  Let's go back to the June
17  5th visit to Dr. Katner's office.  What time did
18  you and Kenny Jacks leave Dr. Katner's office?
19    A.    I'm not sure.
20    Q.    Where did you go when you left there?
21    A.    Back to the trailer.
22    Q.    Did you stop anywhere on the way
23  back?

Page 64

1    A.    I don't think so.
2    Q.    Did Kenny see any other doctors that
3  day?
4    A.    Not that I remember.
5    Q.    Kenny didn't see any other doctors
6  that week, did he?
7    A.    I don't believe so.
8    Q.    When was Kenny's next medical
9  appointment after the June 5 visit with Dr. Katner?
10    A.    I'm not real sure.  I could find out
11  through his medical records and files but -- for
12  certain dates and stuff.
13    Q.    On Monday, June 9th, Kenny did not
14  have any medical appointment with doctors or
15  medical providers, did he?
16    A.    No, sir, I don't think so.
17    Q.    Did you and Kenny go anywhere on
18  Monday, June 9th?
19    A.    He had to go to court that day.
20    Q.    And where did he have to go to court?
21    A.    To the courthouse in Urbana.
22    Q.    The state court or federal?
23    A.    State.

16 (Pages 61 to 64)

Page 65

1    Q.    That was on a traffic violation?
2    A.    I don't remember what it was for.  I
3    believe so.
4    Q.    What time was his court appearance,
5    do you know?
6    A.    I don't know.  They're usually either
7    at ten or one, I think is usually the Court picked
8    times.
9    Q.    But you don't know what time --
10   A.    No, uh-uh.
11   Q.    How did Kenny get to court --
12   A.    I drove.
13   Q.    -- on June 9th?  You drove him?
14   A.    I had to drive him, yeah.
15   Q.    Did you again drive him in the mini
16   van?
17   A.    I believe so.
18   Q.    What time did you leave to get him to
19   court?
20   A.    Thirty, 45 minutes before we was
21   supposed to get there.
22   Q.    That's the approximate driving
23   time --

Page 66

1    A.    Right.
2    Q.    -- from where you live to court?
3    A.    Right.  At that time we wasn't doing
4    much of anything, he wasn't able to do much of
5    anything at that time.
6    Q.    Besides going to court that day, did
7    Kenny have to go anywhere else?
8    A.    I don't believe so that day.
9    Q.    Did you stop anywhere on your way to
10   or from taking him to court?
11   A.    I don't think so.  I'm not positive
12   on it.
13   Q.    Now, you say you remember talking to
14   Stephanie Burris that day sometime before --
15   A.    I called from the courthouse.
16   Q.    You called from the courthouse?
17   A.    Uh-huh.
18   Q.    After court was over?
19   A.    I believe while it was going on.
20   Q.    So you called Stephanie from court?
21   A.    Right.
22   Q.    Did you get ahold of her?
23   A.    Yes, I did.

Page 67

1    Q.    What did you say to her?
2    A.    I told -- I had -- I think I was
3    asking her about the paperwork and told her I
4    wouldn't be able to be in today.
5    Q.    What did she say?
6    A.    She told me that -- I think this is
7    when she told me that I had to come in because the
8    paperwork wasn't right -- stated that I only needed
9    him for transportation or something, I believe.
10   I'm not sure of the exact words.
11        (At this point in the proceedings an
12   off the record discussion was held, after which the
13   following proceedings were conducted;)
14        MR. KLECZEK:  I'm sorry, what's the
15   answer that you got?
16        MR. GARBUTT:  Could you read it back.
17        (At this point in the proceedings the
18   Court Reporter read aloud the aforesaid question,
19   after which the following proceedings were
20   conducted;)
21        BY:  MR. GARBUTT
22   Q.    So are you saying, Ms. Jacks, that
23   Stephanie Burris told you that the FMLA medical

Page 68

1    certification form only authorized you to be off
2    when it was necessary for you to transport Kenny?
3    A.    Right.
4    Q.    What did you say to that?
5    A.    I told her I wouldn't be able to make
6    it in, that I had to take care of him, he couldn't
7    be on his own.
8    Q.    Did you discuss with Stephanie what
9    the medical certification form said?
10   A.    I believe she told me what it said
11   about the transportation part.
12   Q.    Did you tell Stephanie that you were
13   going to call the doctor's office to ask them to
14   clarify the form?
15   A.    I believe so.
16   Q.    Did you do that?
17   A.    Yes, I did.
18   Q.    And did you call the office?
19   A.    I called them.
20   Q.    Who did you talk to?
21   A.    I believe one of the nurses.
22   Q.    Was it the nurse you talked to the
23   day before?

17 (Pages 65 to 68)

Page 69

```
1    A.    Yeah, I think it was.  That's who I
2  was trying to get ahold of.
3    Q.    Do you think you did get ahold of
4  her?
5    A.    I'm not sure if I got ahold of her
6  that day or not.
7    Q.    What did you say to this person that
8  you did get ahold of?
9    A.    Well, they had told us that they was
10  going to give me another week to help him out
11  because of him needing the help of getting around
12  and going and doing.  And then they -- it went to
13  just transportation.  So I was going to try to get
14  that straightened out to where -- that I was
15  covered anyway.
16    Q.    My question was, what did you say to
17  this person at Dr. Katner's office that you got
18  ahold of on the phone on June 9th?
19    A.    I was asking her about the difference
20  between just the transportation and being at home
21  with him.
22    Q.    So did you tell this person at Dr.
23  Katner's office that you wanted the form to say
```

Page 70

```
1  that you were entitled to be off work for a week to
2  take care of Kenny?
3    A.    I believe so.  I'm not sure.
4    Q.    What did this person reply to you?
5    A.    I'm not -- I'm not sure how it went
6  from there.
7    Q.    After that conversation between you
8  and Dr. Katner's office, did you speak to Stephanie
9  Burris again?
10    A.    I'm not sure if I did or not.
11    Q.    Didn't Stephanie tell you that she
12  would also talk to the doctor's office to get a
13  clarification of what the form meant?
14    A.    I don't remember, I don't remember
15  that.
16    Q.    What did you do after you and Kenny
17  left court in Urbana on Monday, June 9th?
18    A.    I'm not sure.  I'm assuming we went
19  straight back home.  I know he wasn't doing
20  anything at that time but what had to be done.  He
21  was in a lot of pain.
22    Q.    So he just wanted to go home again
23  after he was through in court?
```

Page 71

```
1    A.    Uh-huh.
2    Q.    He was well enough to go to court
3  then, right?
4    A.    Well, there's a difference in being
5  well enough to have to go and having to be there to
6  not get a warrant put out on you.  So, I mean,
7  that's something that has to be done, so he had to
8  go to court that day.
9    Q.    Even though he was in serious pain
10  from his back --
11    A.    Right.
12    Q.    -- he had to go to court?
13    A.    Well, yeah.
14    Q.    And when you got to court, once again
15  Kenny walked into court under his own power, right?
16    A.    Right.
17    Q.    And --
18    A.    He used me a lot as a -- I would say a
19  crutch or whatever.  I mean, he held on to me and I
20  held on to him to help him, you know, keep his
21  balance and stuff because...
22    Q.    And he walked out of court on his own
23  power, --
```

Page 72

```
1    A.    Uh-huh.
2    Q.    -- correct?  Is that a yes?
3    A.    Yes.
4    Q.    And was his court case called while
5  you were there?
6    A.    Yes.
7    Q.    He stood up in court on his own,
8  didn't he?
9    A.    Well, yes.
10    Q.    He never had a wheelchair at
11  anytime --
12    A.    No.
13    Q.    -- while he was in court, I take it?
14    A.    (Witness shakes head.)
15    Q.    You have to answer.
16    A.    No, sir.
17    Q.    Now, there was no trial that day, was
18  there?
19    A.    No, I don't believe so.
20    Q.    All that happened that day was the
21  case was set for trial the following week, right?
22    A.    Right.  I believe so.
23    Q.    And Kenny didn't ask to put the trial
```

18 (Pages 69 to 72)

**Defendant Conair Corporation's Response in
Opposition to Plaintiff's Motion for Enlargement of Time**

# EXHIBIT C



Page 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

SHARON JACKS,           )
                        )
    Plaintiff,          )
                        )
    -vs-                )   No. 04-2230
                        )
CONAIR CORPORATION,     )
                        )
    Defendant.          )

THE DISCOVERY DEPOSITION of STEPHANIE
D. BURRIS, the deponent herein, called by the
Plaintiff for examination pursuant to notice and
agreement and pursuant to the provisions of the
Code of Civil Procedure and the Rules of the
Supreme Court thereof pertaining to the taking of
depositions, taken before me, Jill A. Bleskey,
CSR-RPR, License No. 084-004430, a Notary Public in
and for the State of Illinois, at Brookens
Administration Building, Meeting Room 2, 1776 East
Washington Street, in the City of Urbana, County of
Champaign, and State of Illinois on the 17th day of
January, A.D., 2006, commencing at 11:00 a.m.

------------------------------------

        Jill A. Bleskey, RPR
        CSR #084-004430

---

Page 2

APPEARANCES
For the Plaintiff:
    KLECZEK LAW OFFICES
    Attorneys at Law
    321 N.E. Madison Avenue
    Peoria, Illinois 61603
    (309)674-4141
    BY: Mr. David Kleczek

For the Defendant:

    MECKLER, BULGER & TILSON, LLP
    Attorneys at Law
    123 North Wacker Drive, Suite 1800
    Chicago, Illinois 60606
    (312)474-7909
    BY: Mr. J. Stuart Garbutt

INDEX

EXAMINATION CONDUCTED BY:          PAGE:

    Mr. Kleczek              4

INDEX OF EXHIBITS

EXHIBIT NUMBER              PAGE

    1 - Personnel Change Form       32
    2 - Termination Checklist       34
    3 - Personal History Sheet      36
    4 - Personnel Change Form       37
    5 - 2003 Absentee Calendar      38
    6 - Confidential Performance Appraisal 56
    7 - Not Identified
    8 - 6/10/03 Memo to Sharon Jacks from
        Stephanie Burris           87
    9 - 6/9/03 Memo to Sharon Jacks from
        Stephanie Burris           83
    10- 11/19/03 Letter to Stephanie
        Burris from Kleczek Law Office   89

---

Page 3

INDEX CONTINUED
EXHIBIT NUMBER              PAGE
11- Not Identified
12- FMLA Certification of Health
    Care Provider          63
13- 2002 Absentee Calendar      43

NOTE: Exhibits 1-6, 8-10, 12 & 13 attached to
transcript.
    Exhibits 7 & 11 retained by Attorney
Kleczek.

---

Page 4

STEPHANIE D. BURRIS,
    The witness, having been first duly
sworn upon her oath, testified as follows:
    EXAMINATION CONDUCTED
    BY: MR. KLECZEK
    Q.    Let the record reflect that this is
the deposition of Stephanie Burris taken pursuant
to notice, agreement of the parties, and the
Federal Rules of Civil Procedure. And let the
record also reflect that Ms. Burris has been sworn
in. Ms. Burris, could you state and spell your
full name for the record, please?
    A.    Stephanie Burris, S-T-E-P-H-A-N-I-E,
last name B-U-R-R-I-S.
    Q.    Do you have any middle name?
    A.    D as in Dawn.
    Q.    What's your current address?
    A.    602 Pheasant Lane in Savoy, Illinois,
61874.
    Q.    Are you married?
    A.    No.
    Q.    Any kids?
    A.    Yes.

1 (Pages 1 to 4)

Page 81

1    9th.
2        Q.    Okay.
3        A.    The ball was in her court at that
4    point to get them changed.  And had I received
5    updated forms that day to have her off she'd have
6    been off, she'd have been approved.
7        Q.    What if she brought in updated forms
8    say on June 11th?
9        A.    That would -- we would have had to
10    have considered it.
11        Q.    You would have had to have considered
12    it?
13        A.    Yeah.
14        Q.    Okay.  But you never told her after
15    she picked up her check Friday that she could still
16    bring in the forms?
17        A.    No.  She didn't even bring it up.
18        Q.    Okay.  She was never -- did you ever
19    send her any letters?
20        A.    No.
21        Q.    And you never sent her any additional
22    forms?
23        A.    No.

Page 82

1        Q.    Okay.  And I want to understand, your
2    words to her on Monday were that if you don't get
3    us an updated form or you don't show up tonight you
4    will be terminated?
5        A.    No.  What I said to her was, based on
6    these forms had to report for her shift and if
7    she didn't she would terminate because that would
8    take her to three final warnings.
9        Q.    Okay.  So it's reasonable for her to
10    have understood that she would be fired if she
11    didn't come in that day?
12        A.    I believe so, yes.
13        Q.    Okay.  And did you at all ever
14    discuss reinstatement?
15        A.    It was never -- no, it was never a
16    topic.
17        Q.    Okay.  All right.  On June 9th you
18    had made various phone calls to Dr. Katner's
19    office?
20        A.    Yes.
21        Q.    And you first called Dr. Katner at
22    8:05 in the morning?
23        A.    After I -- right after they opened up

Page 83

1    the office, yes.
2        Q.    But you had to leave a message for
3    somebody?
4        A.    Yes.
5        Q.    Did somebody call you back?
6        A.    Yes.
7        Q.    And who was that?
8        A.    Her name was Jo.
9        Q.    Do you remember the time?
10        A.    No.
11        Q.    All right.  But they didn't call you
12    back -- strike that.  They called you back -- Dr.
13    Katner's office called you back after you talked to
14    Sharon the first time?
15        A.    Yes.
16        Q.    Okay.  Your notes indicate -- I'm
17    handing you what's been marked Burris Deposition
18    Exhibit 9.  Your notes indicate that Jo called you
19    back at approximately 3:15 in the afternoon.
20        A.    Yes.
21        Q.    Okay.  And do you know who Jo was?
22        A.    No.
23        Q.    How did this person identify

Page 84

1    themselves?
2        A.    This is Jo from Dr. Katner's office.
3        Q.    A male or female?
4        A.    Female.
5        Q.    A nurse or receptionist?
6        A.    I would not know.
7        Q.    Okay.  They didn't in any way
8    indicate they were a medical provider?
9        A.    No.
10        Q.    All right.  And they said that -- or
11    she said the paperwork was correct?
12        A.    Yes.
13        Q.    And she's standing by the paperwork?
14        A.    Yes.
15        Q.    Okay.  Did she indicate that she had
16    filled out the paperwork?
17        A.    No.
18        Q.    Did she explain what the paperwork
19    meant to you?
20        A.    Could you clarify that?
21        Q.    Did she explain in further depth what
22    the paperwork meant?
23        A.    All -- it meant -- I asked her if

Page 85

1  Sharon needed to provide 24/7 care. That was
2  Sharon's terminology so I used the same terminology
3  with her. No, Dr. Katner's office stood by the
4  fact that she only needed to provide him
5  transportation.
6      Q.    What was she referring to when she
7  said this?
8      A.    The Family Leave paperwork where it
9  doesn't say that Sharon needs to be off work to
10 provide round the clock care.
11     Q.    Okay. So she was interpreting this
12 FMLA paperwork that you had in front of you as
13 well?
14     A.    Yes.
15     Q.    Okay. She didn't in any way indicate
16 that she had discussed this matter with either --
17 with any of the treating medical providers?
18     A.    Yes. Because when I called and left
19 a message she apologized for getting back with me
20 so late because she had to meet with the doctor to
21 clarify.
22     Q.    Okay.
23     A.    Actually to follow-up on my request.

Page 86

1      Q.    Did she say why or what she discussed
2  with the doctor?
3      A.    No.
4      Q.    Did the doctor indicate what kind of
5  transportation or the frequency of the
6  transportation that Sharon needed to provide?
7      A.    No.
8      Q.    But that all transportation for Kenny
9  Jacks needed to be provided by Sharon Jacks, that
10 was your understanding?
11     A.    Yes.
12     Q.    Okay. Did you have any other
13 conversations with Dr. Katner's office after
14 talking with Jo?
15     A.    No.
16     Q.    That was the only conversation you
17 had with them?
18     A.    Yes.
19     Q.    Okay. What was Sharon Jacks', what
20 was her shift?
21     A.    Second shift.
22     Q.    And what are the hours of second?
23     A.    3:45 to 12:15 in the morning, Monday

Page 87

1  through Friday.
2      Q.    How far is the Champaign courthouse
3  from the Conair facility?
4      A.    I don't know.
5      Q.    Would you say that it's over a 15
6  minute drive?
7      A.    It's probably 15, 20 minutes, yes.
8      Q.    Okay. And Ms. Jacks called you at
9  3:30, according to Deposition Exhibit --
10     A.    Yes.
11     Q.    -- Number 8, correct?
12     A.    Yes.
13     Q.    And she said she was at the
14 courthouse at that time?
15     A.    Yes.
16     Q.    Okay. Okay. At some point Sharon
17 told you that she needed to be home with Kenny
18 24/7?
19     A.    Yes.
20     Q.    When was that?
21     A.    That Monday.
22     Q.    Which Monday?
23     A.    That she requested the family leave.

Page 88

1      Q.    Okay. All right. So it's fair that
2  you understood that she was communicating that she
3  wasn't going to be at work for an extended period
4  of time, right?
5      A.    Yes.
6      Q.    Okay. I mean, Monday the 9th things
7  hadn't changed in her insistence that Kenny needed
8  24/7 care, right?
9      A.    Her need hadn't change, no.
10     Q.    Okay. But I'm saying she didn't say
11 that, okay, Kenny doesn't require 24/7 care as of
12 Monday the 9th?
13     A.    No.
14     Q.    All right. So a fair interpretation
15 would be that she wasn't going to come in Monday
16 the 9th due to Kenny's condition or her belief of
17 Kenny's condition?
18     A.    Right.
19     Q.    And that's what you understood at the
20 time?
21     A.    Yes.
22     Q.    Okay. Now, you received a letter
23 from me, correct?

Defendant Conair Corporation's Response in
Opposition to Plaintiff's Motion for Enlargement of Time

# EXHIBIT D

# MECKLER BULGER & TILSON LLP

Eileen E. Baker
Jeffrey A. Berman
Anne L. Blume
Brian W. Bulger
Jack J. Carriglio
Janet S. Davis
John E. DeLascio
Karen M. Dixon 8
J. Stuart Garbutt
Paul R. Garry
Brent J. Graber
J. Robert Hall
Rebecca R. Haller
Brett D. Heinrich
Christopher S. Hennessy
James J. Hickey
Richard A. Hodyl, Jr.
James H. Kallianis, Jr. 1
Christopher E. Kentra
Philip R. King
Mari Henry Leigh 10
Michael I. Leonard
Michael S. Loeffler
Eric E. Lynch 9
Michael M. Marick 3

Bruce R. Meckler
Steven D. Pearson
Pamela G. Perrone
Alan M. Posner
Don R. Sampen
Jason R. Schulze
Scott M. Seaman
Mark J. Seplak
Jerome C. Studer
Joseph E. Tilson
Julie L. Trester
Peter J. Valeta
Matthew R. Wildermuth
Brian J. Williams
Timothy A. Wolfe

Of Counsel
Alex V. Barbour
John K. Daly 2
Ziyad I. Naccasha 1
Thomas J. O'Brien
Peter Petrakis
Georgene M. Wilson

Robert J. Ambrose
James G. Argionis
Phillip K. Beth 5
Lauren W. Blatt
Mark E. Bojan
David D. Brown
Robert E. Browne, Jr.11
Matthew E. Cohn
W. Andrew. Dalton 4
Seth E. Darmstadter
Kerry L. Davidson
Blair L. Dawson
Victoria Dizik
Mitchell J. Edlund
Elizabeth J.M. Fulton
Megan E. Garvey
Lynn Geerdes-Lugo 6
Jeremy J. Glenn
Richard R. Gordon
Carrie L. Graziani
Jeffrey B. Greenspan
Andrew M. Hutchison
J. Aaron Jensen
Melissa A. King

Charlotte S. Kormendy
Jonathan D. Lichterman
Chad W. Main
Sandra J. McMullan
Eric E. Newman
Omar S. Odland 3
Jennifer J. Pomaranski
Jacob M. Rubinstein
Meaghan L. Schneider
E. Lynette Stafford 7
Sara G. Uffelman
Timothy J. Walsh
Kristen A. Weisse
Anna Wermuth

1  Also Admitted in California
2  Also Admitted in Colorado
3  Also Admitted in Florida
4  Also Admitted in Georgia
5  Also Admitted in Indiana
6  Also Admitted in Iowa
7  Also Admitted in Minnesota
    and Wisconsin
8  Also Admitted in Nebraska
9  Also Admitted in New York
    and New Jersey
10  Also Admitted in Ohio
11  Also Admitted in Wisconsin

123 North Wacker Drive

Suite 1800

Chicago, Illinois 60606

Telephone:  312-474-7900

facsimile:  312-474-7898

Web Site:  www.mbtlaw.com

Direct Dial:  (312) 474-7976

E-mail:  kerry.davidson@mbtlaw.com

January 27, 2006

**_VIA U.S. CERTIFIED MAIL_**

Central Illinois Neurohealth Sciences
1015 South Mercer Avenue
Bloomington, Illinois  61701

      Re:  **Sharon Jacks v. Conair Corporation**
          **Case No. : 04-2230**

Dear Sir or Madam:

We are counsel to defendant Conair Corporation in the above-referenced litigation. Please allow this letter to serve as a follow-up to the three voice-mail messages I left with your Human Resources Department.

Although Central Illinois Neurohealth Sciences is not a party to this litigation, we believe that a former employee of your organization may have information relating to the referenced lawsuit and we are attempting to contact her.

We have enclosed a subpoena for records related to this inquiry. The attachment to the subpoena describes what records you are commanded to produce. We will compensate you for the actual cost of the copies. Please be advised that you are legally required to comply with this federal subpoena.

Please do not hesitate to contact me if you have any questions or comments.

Very truly yours,

Kerry Lin Davidson

KLD/cm
Enclosure
cc:    David A. Kleczek, Esq. *(counsel for plaintiff)*
N:\4161\corres\CentralIllinois001kld.doc

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

|  |  |
|---|---|
| SHARON JACKS,<br>               Plaintiff,<br><br>      v.<br><br>CONAIR CORPORATION,<br>               Defendants. | **SUBPOENA IN A CIVIL CASE**<br><br><br>Civil Action No.  **04-2230** |

TO:    **Central Illinois Neurohealth Sciences**
            **1015 South Mercer Avenue**
            **Bloomington, Illinois  61701**
            **(309) 662-7500**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  **Please see the attached Rider.**

| PLACE | DATE AND TIME |
|---|---|
| **Meckler Bulger & Tilson, LLP**<br>**123 North Wacker Drive, Suite 1800, Chicago, Illinois 60606** | **February 27, 2006** |

☐ YOU ARE COMMANDED to produce and permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| Issuing Officer Signature and Title (Indicate if attorney for Plaintiff or Defendant) | Date |
|---|---|
| **Attorney for Defendant** | **January 27, 2006** |

Issuing Officer's Name, Address, and Phone Number:

**Kerry Lin Davidson, Meckler Bulger & Tilson, LLP, 123 North Wacker Dr., Ste. 1800, Chicago, Illinois 60606, (312) 474-7976**

(See Rule 45, Federal Rules of Civil Procedure Parts C & D on Reverse)

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| **January 27, 2006** | **123 N. Wacker Drive, Ste. 1800, Chicago, Illinois 60606** |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| **Central Illinois Neurohealth Sciences** | **Certified Mail** |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| **Kerry Lin Davidson** | **Attorney for Defendants** |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on    **January 27, 2006**
                    DATE

SIGNATURE OF SERVER

**123 N. Wacker Dr., Chicago, IL 60606**
ADDRESS OF SERVER

## Rule 45, Federal Rules of Civil Procedure, Parts C & D

**(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, of commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

**(d) DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## RIDER

Produce any and all employment records relating to the employment of the individual identified as "Jo," "Jo Scott," or "Jo Scott RN," as stated on "work clinical task" documents dated June 9, 2003 and June 10, 2003, and employed at any time during the month of June, 2003, including the personnel file of said individual and any and all information related to the termination of said individual and/or current contact information.

N:\4161\pleading\Rider-CentralIllinois.doc