E-FILED
Monday, 01 May, 2006 03:47:49 PM
Clerk, U.S. District Court, ILCD

# APPENDIX 7

**Affidavit of Martha Jo Scott, RN (including exhibits)**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| SHARON JACKS, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Case No. : 04-2230 |
| v. | ) ) ) | Judge Michael P. McCuskey Magistrate Judge David G. Bernthal |
| CONAIR CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |

## **AFFIDAVIT**

I, Martha Jo Scott, first being duly sworn on oath, depose and state as follows:

1. I make this Affidavit on personal knowledge and, if called as a witness, I can competently testify to the matters contained herein.

2. Although my name is Martha, I generally use my middle name, "Jo," in both written and oral communications.

3. I am a registered nurse and was employed by Central Illinois Neuro Health Sciences, located at 1015 S. Mercer Avenue in Bloomington, Illinois, 61701, between the dates of March 2002 and November 10, 2005.

4. In addition to the clinic facility located at 1015 S. Mercer Avenue in Bloomington, Illinois 61701, Central Illinois Health Sciences also maintains a clinic located in Clinton, Illinois, which is visited by the physicians and their nurses.

5. During my employment with Central Illinois Neuro Health Sciences, my job functions included assisting Dr. Keith A. Kattner, D.O., a physician at Central Illinois Neuro Health Sciences.

6. In June of 2003, one of my job duties was to answer telephone calls from patients as a "phone nurse." The function of a "phone nurse" is to provide a direct medical response to patient inquiries when physicians and their nurses are seeing patients or otherwise unavailable.

7. In the normal and ordinary course of my employment with Central Illinois Health Sciences, I created and maintained notes of all telephone conversations with patients. These notes reflected the substance of my discussions, including any follow-up actions, where applicable.

8. I entered my notes either directly in the patient's chart as a "Progress Note" or into an electronic "Work Clinical Tasks" database, where each time and dated entry was authenticated by my electronic signature, "JoScott RN," or "Created by Jo." When I created supplemental entries in the "Work Clinical Tasks" database, I wrote "see phone notes" in the Progress Notes section of the patient's chart.

9. The attached documents, Exhibits 1-4, accurately reflect conversations relating to the treatment and care of Mr. Kenneth Jacks, who was at the time, a patient of Central Illinois Neuro Health Sciences. Exhibits 1-3, are true and authentic copies of the Work Clinical Tasks created by me on the dates of June 9 and June 10, 2003. Exhibit 4 is a true and correct copy of the Progress Notes maintained in Mr. Jacks' file for the period of June 6, 2003 to June 11, 2003.

10. On June 9, 2003, I received notice that Mr. Jacks' wife, Sharon Jacks, had telephoned the clinic asking us to contact her employer, Conair, regarding an FMLA certification form relating to the care of her husband. *See Exhibit 1, 06/09/03, 15:20.*

11. As reflected in my notes of June 9, 2003, I contacted Ms. Stephanie Burris, a human resources representative at Conair, who wanted clarification regarding information stated on an FMLA certification form regarding the care of Ms. Jacks' husband. Specifically, Ms.

2

Burris wanted to know whether Mr. Jacks' condition required 24-hour care or whether his medication and surgical condition only restricted his ability to drive. *See Exhibit 1, 06/09/03 15:20.*

12. Upon an independent review of the status of Mr. Jacks' surgery and medical condition as stated in his medical chart, and in consultation with Dr. Kattner, I confirmed that Mr. Jacks did not require constant care. Therefore, as reflected in my June 9, 2003 notes, I told Ms. Burris that Mr. Jacks only required transportation by his wife, not full-time care. *See Exhibit 1, 06/09/03 15:20.*

13. Later on June 9, 2030, I received a call from Ms. Jacks. Ms. Jacks asked the clinic to change the FMLA form to state that she needed to care for her husband on a full-time basis. However, I told her that the completed form accurately reflected her husband's medical condition and that it would stand as written because Mr. Jacks could stay home alone, but should not drive. After talking with Ms. Jacks, I updated my notes in the Work Clinical Task database. *See Exhibit 1, 06/09/03 15:38.*

14. The next day, I spoke again to Ms. Jacks regarding the FMLA form completed by the clinic. I again told Ms. Jacks that upon review with Dr. Kattner, her husband did not require full-time care, that she might need to take off work to take her husband to scheduled appointments, but that "other needs could be handled before and after work." *See Exhibit 2, 06/10/03 09:10.*

15. Approximately twenty minutes later, I received a call from Dr. Kattner's nurse, Karen Stoller, who stated that Ms. Jacks had attempted to reach Dr. Kattner at the remote clinic in Clinton, Illinois and reportedly threatened his other nurse, Rita Karczewski. Therefore, I called the Jacks' residence, and told Mr. Jacks that patients were not to contact the clinics

3

directly and again stated that the FMLA form was correct as written. *See Exhibit 2, 06/10/03, 09:30.*

16.  I then attended a meeting with Karen Stoller, Rita Karczewski, and Karen Sager, Director of Clinical Operations. Dr. Kattner had directed me to "blacktape" Mr. Jacks' chart. A "blacktaped" chart means that the patient will no longer be seen at the clinic. All pending appointments are cancelled, and all telephone inquiries are referred to the Director of Clinical Operators or the Administrator, who was at the time Mercedes Inman.

17.  On June 10, 2003, I noted in both the Work Clinical Tasks electronic database and in Mr. Jacks' Progress Notes that his chart was "blacktaped," and that no return visits were to be scheduled. Based on the meeting with Karen Sager, I am also personally aware that Mr. and Ms. Jacks received notice, both orally and in writing, that Dr. Kattner would not see Mr. Jacks again. *Exhibit 3, 06/10/03, 14:52, Exhibit 4, 6/10/03, 6/11/03.*

19.  The progress notes for the period of June 9, 2003 to June 11, 2003, in combination with my phone notes in the Work Clinical Tasks Database, accurately reflect my recollection of the events relating to the FMLA certification form completed by Central Illinois Neuro Health Sciences, my conversations regarding Ms. Jacks employment, and the reason for the termination of the patient relationship between Central Illinois Neuro Health Sciences and Mr. Jacks. *See Exhibits 1-4.*

FURTHER AFFIANT SAYETH NOT.

*[signature]*
MARTHA JO SCOTT, RN

SUBSCRIBED AND SWORN TO BEFORE
ME THIS 21 DAY OF FEBRUARY, 2006.
*[signature]*
NOTARY PUBLIC

N:\4161\pleading\AFF-Scott.doc

*[Notary Seal: "OFFICIAL SEAL" Andrew S. deWaard, Notary Public, State of Illinois, McLean County, My Commission Expires July 5, 2009]*

4

**Exhibit 1**
**Affidavit of Martha Jo Scott, R.N.**

```
User #:48                    WORK CLINICAL TASKS                         [Jo]
Case # :
[WORK ISSUES]
  Pri   Date    Patient    Name              Description          Rem  Type

   2  06/09/03  27692.0   JACKS, KENNETH    WORK ISSUES            Y   WORK
Rita:
1520:  Gail from Foundation got a call from Mrs. Jacks requesting this office
call Stephanie Burris at 217-892-8400 at Conair about the FMLA forms.  Mrs
Jacks was asking to be home with her husband 24hours/day and would lose her
job if not clarified.  Call to above number and Stephanie wanted to know if
Mrs. Jacks could be gone from work only to transport her husband.  Stephanie
was told that patient could be alone on medication, but not drive. JoScott
RN.
Created By Jo                                 On Mon Jun 09 15:38 2003 ( 48)
Call from Mrs Jacks stating they had been gone most of the day to court,
getting insurance info, and running around.  She wanted to know if call had
been made to Stephanie as above.  Mrs Jacks was told the form was completed as
requested and it stands as written.  Mr Jacks can stay alone on meds
prescribed and she could transport him to appts since he should not drive. She
was encouraged to listed to message left on home machine by Stephanie and then
call her with any questions.  Mrs Jacks hung up.         JoScott RN

  (W)indow View, (A)dd, (F)orward, (C)omplete, (O)ptions, or <Enter> to Work : .
```

**Exhibit 2
Affidavit of Martha Jo Scott, R.N.**

```
User # : 48                    WORK CLINICAL TASKS                        [Jo]
Case # :
[WORK ISSUES]
 Pri   Date     Patient    Name              Description           Rem  Type
  2  06/10/03  27692.0   JACKS, KENNETH    WORK ISSUES              Y   WORK
```

0910: Call from Sharon Jacks who again told this nurse that the FMLA forms Rita filled out were not correct in that Karen Stoller had said she could be off to take care of her husband. Sharon was told that the off-work time was for taking her husband to appts, but that other needs could be handled before and after work. Sharon stated she lost her job because she did not go yesterday(see 6/9 note) Sharon was told that the message would be give to KAK staff upon their return this afternoon.

0930: Call from Karen Stoller who stated Sharon called the CLinton clinic and wanted clarification. Returned call to Sharon but husband answered phone. It was explained that clinics are not to be called and the FMLA form is correct The time off from her job was to be for transportation to appts. Mr Jacks stated he was unhappy with the office and would seek care elsewhere. Pt was assured that only the best care was desired for him

Created By Jo                                    On Tue Jun 10 09:52 2003 ( 48)

```
  2  06/09/03  27692.0   JACKS, KENNETH    WORK ISSUES              Y   WORK
```

(N)ext, (P)rev, (H)ardcopy, (R)emarks Off, (D)etail, or (O)ptions : .

**Exhibit 3
Affidavit of Martha Jo Scott, R.N.**

```
User # : 48                   WORK CLINICAL TASKS                          [Jo]
Case # :
Doctor : 2                                                    [KEITH KATTNER  DO]
[Misc.]
 Pri   Date     Patient    Name              Description              Type

  3  06/10/03  27692.0    JACKS, KENNETH     Misc.                    MISC
[Remarks]
KAK informed of all conversations and notes of 6/9 and 6/10.  Per KAK
blacktape chart, no return visits, all inquiries to KarenRae or Mercedes.  All
documentation to chart.                                       JoScott RN
Created By Jo                                On Tue Jun 10 14:52 2003 ( 48)
..................................................................................


   EDIT MODE              <Process> to Save, or <Exit>
```

**Exhibit 4**
**Affidavit of Martha Jo Scott, R.N.**

## PROGRESS NOTES


12-53
27692

| Date | | Notes |
|---|---|---|
| 6-6-03 | | FMLA papers for Sharon Jacks ~~mailed~~ faxed to Conan 217-892-2479. R Kaczewski R)  *error RK 6-6-03* |
| 6/9/03 | | Telephone note ——— J Scott |
| 6/10/03 | | Telephone notes ——— J Scott |
| 6/10/03 | | Per KAK - chart is to be blackstaped, no F/U visits. See all phone notes ——— J Scott |
| 6/11/03 | KAS | Per Dr KAK, nurses & the phone nurse, Jo, Mrs Jacks has threatened Dr KAK nurse, Rita K. I have reviewed with Jo Scott, Karen Staller, & Rita K. this issue & have called & talked w/ Mrs Jacks. I did tell her that we would be glad to fax over an excuse for the one week but the FMLA form will stand as is as it is completed correctly. Kenneth's appt has been cancelled & Dr Kattner will not see him again & he is to return to Dr Thatcher. She understood. I told her that we take threats seriously & have to think of our employees well being. |
| 6/17/03 | | Release from case letter sent M Moran — Karen Sager, OM |