**E-FILED**
Monday, 22 May, 2006 02:57:56 PM
Clerk, U.S. District Court, ILCD

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| SHARON JACKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. : 04-2230 |
| v. | ) | |
| | ) | Judge Michael P. McCuskey |
| CONAIR CORPORATION, | ) | Magistrate Judge David G. Bernthal |
| | ) | |
| Defendant. | ) | |

### DEFENDANT CONAIR CORPORATION'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendant, Conair Corporation ("Conair"), by and through its undersigned attorneys, in opposition to Plaintiff's Motion for Summary Judgment, hereby states as follows:

## I.    INTRODUCTION

Plaintiff's motion is premised on the fundamentally erroneous notion that, if her husband had a "serious health condition" within the meaning of the Family and Medical Leave Act (FMLA), the FMLA automatically entitled her to take up to twelve continuous weeks off work, even if she was medically needed to care for her husband only when he needed to be driven somewhere. That notion is plainly incorrect as a matter of law.

The FMLA permits a covered employee to take time off work to care for her spouse only when, as certified by the spouse's health care provider, the spouse *needs* the employee's care. The FMLA clearly does not, as Plaintiff argues, entitle such an employee to choose whether to take time off continuously or just when needed. The FMLA entitles such an employee to time off only at those times when it is medically necessary for the employee to provide the care.

The FMLA authorizes an employer to require an employee to provide a medical certification indicating whether and when it is medically necessary for the employee to provide

care for another.  Conair required such a certification in Plaintiff's case.  The FMLA makes that certification determination.  The completed certification that Plaintiff submitted, from her husband's medical provider, indicated that Plaintiff was only needed when her husband had to be driven somewhere.  Thus, by the very terms of the document on which Plaintiff's FMLA claim depends, she was not authorized to miss work on the night of the absence which caused her to be discharged.

Plaintiff alternatively suggests that she was entitled to an opportunity to get the medical certification corrected– i.e., to get it to state that she *was* needed to care for her husband continuously – before Conair could discharge her.  Again, Plaintiff is wrong as a matter of law.  The completed medical certification that Plaintiff submitted was not incomplete.  It stated that Plaintiff's husband needed Plaintiff's care to the extent that he was "unable to drive due to pain level and medication."  It was, therefore, completely adequate for Conair to act upon.  And even if Plaintiff was entitled to an opportunity to seek a revision of the certification, the undisputed facts reflect that she was afforded that opportunity.  Hours before her shift on the day in question, Conair informed Plaintiff that the medical certification would not authorize her absence from work that night, after she was finished driving her husband, and that she therefore would have to report for that shift.  At that time, Plaintiff told Conair that Plaintiff was going to call the medical provider in an attempt to get the certification changed.  Conair indicated it would also call the provider to assure that it was interpreting the certification correctly.  The undisputed facts establish that both Plaintiff and Conair *did* call the medical provider – *and both were told that the certification meant just what it said and would not be changed.*

It follows, as set forth more fully below, not only that Plaintiff's motion for summary judgment is fatally flawed, but that, under the undisputed facts, it is Conair and not Plaintiff that

2

is entitled to judgment as a matter of law.  Accordingly, Conair respectfully requests that the

Court deny Plaintiff's motion and enter judgment for Conair on Conair's cross-motion.

## II.    **RESPONSE TO PLAINTIFF'S UNDISPUTED MATERIAL FACTS**[1]

### A.    **Undisputed Material Facts**

1.    Stephanie Burris was and is at all relevant times the Human Resource Manage[r] [sic] for Defendant, Con-Air Corporation.  (Burris Dep. 8:15-22).

**RESPONSE:**  Undisputed, except that Defendant's correct name is Conair Corporation.[2]

2.    Con-Air Corporation was at all relevant times an employer covered by the Family Medical Leave Act.  Defendant's Answer to Complaint, para. 10

**RESPONSE:**  Undisputed.

3.    Ms. Burris' responsibilities and duties include interviewing, hiring, terminating, and disciplining employees.    They also include benefits administration for the employees.  (Burris Dep. 11:7-12).

**RESPONSE:**  Undisputed.

5.    Sharon Jacks is, and at all relevant times was, lawfully married to Kenny Jacks.  (Sharon Jacks Dep. 5:22-23).

**RESPONSE:**  Undisputed.

6.    Sharon Jacks was hired by Con-Air Corporation in May 2001 by Ms. Burris.  (Burris Dep. 22:21-23:2).  Sharon Jacks worked over 1,250 hours in the twelve month period prior to June 2, 2003.  (Affidavit of Sharon Jacks).

**RESPONSE:**  Undisputed.

7.    Sharon Jacks called Stephanie Burris on June 2, 2003 and told Ms. Burris that her husband, Kenny Jacks, had hurt his back and she would need to be off with him.  (Burris Dep. 61:10-22; Jacks Dep. 31:7-23).  Kenny Jacks had suffered his injury on May 29, 2003.  (Jacks Dep. 31:7-23).

---

[1]    The following facts are undisputed for purposes of summary judgment only.  However, Conair reserves the right to dispute Plaintiff's assertion at trial, if necessary. The pleadings, affidavits and deposition excerpts referred to in Conair's response are attached as appendices to this Memorandum, covered by an index.

[2]    Plaintiff incorrectly refers to Defendant as "Con-air" throughout her statement of facts.

**RESPONSE:** Undisputed.

8.      Mrs. Jacks took off work from June 2 to June 6, 2003. (Jacks Dep. 30:20-22).

**RESPONSE:** Undisputed.

9.      During the week of June 2 to June 6, 2003 Sharon Jacks talked to Stephanie Burris about taking time off pursuant to the Family Medical Leave Act. (Jacks Dep. 50:5-12).

**RESPONSE:** Conair does not dispute that Plaintiff talked to Burris on June 2, 2006 about missing work to care for her husband, but that was the *only* such conversation that occurred "during the week of June 2 to June 6, 2003." Jacks testified that she contacted Burris once on June 2, 2003 (Jacks Dep. at 50:5-12; 51:1-4), and admitted that she had no further contact with Burris the remainder of that week; she did not speak to Burris again until Monday, June 9, 2003. (Jacks dep. at 62:17-21 and 63:2-15).

10.      Sharon Jacks filled out a portion of the FMLA request. (Burris Dep. 64:1-4). Mrs. Jacks picked up the FMLA form request from Con-Air Corporation after June 2, 2003. (Burris Dep. 62:10-15).

**RESPONSE:** Undisputed.

11.      Ms. Burris made an FMLA Certification form available to Sharon Jacks. Sharon Jacks picked up the FMLA from Con-Air Corporation in Rantoul, Illinois and brought it to Dr. Kattner's office requesting him to fill out and fax it to Con-Air Corporation. (Jacks Dep. 52:1-53).

**RESPONSE:** Undisputed.

13.      The form submitted from Dr. Kattner's office indicated that the medical condition began on May 29, 2003, that the duration of the condition was undetermined and that the next office was June 23, 2003. (Burris Dep. 65:11-15).

**RESPONSE:** Undisputed.

14.      Ms. Burris confirmed the verification of health care provider as attached as Exhibit 12 of the Burris deposition was received by her on June 9, 2003. (Burris Dep. Exhibit 12, Dep. 63:15-16). The Certification states "patient will be seeing pain management for injections and then to physical therapy." (Burris

Dep. Exhibit 12). The Certification also states that the condition "began 5/29/03" and the "duration was undetermined" but that the "next office visit [was] 6/23/03" (Burris Dep. Exhibit 12).

**RESPONSE:** Undisputed.

16.     The form was signed by Dr. Kattner. (Burris Dep. 67:9-11).

**RESPONSE:** Undisputed.

22.     On Monday June 9, 2003, Kenny Jacks was required to go to the Courthouse in Urbana. (Jacks Dep. 64:17-23). Mrs. Jacks was the one that had to drive him. (Jacks Dep. 65:5-17).

**RESPONSE:** Conair does not dispute that Plaintiff testified that on Monday, June 9, 2003, she drove her husband to a scheduled court hearing in Urbana. Plaintiff did not testify however, that "she was the one that had to drive him." (Jacks Dep. 65:5-17).

24.     On June 9, 2003, in a telephone conversation with Stephanie Burris, Ms. Burris told Mrs. Jacks that the Certification form authorized Mrs. Jacks to be off to transport Kenny Jacks. (Jacks Dep. 67:22-68:7).

**RESPONSE:** Conair does not dispute that Plaintiff testified that Burris told her, in a June 9, 2003 telephone conversation, "that the FMLA medical certification form only authorized [Plaintiff] to be off when it was necessary for [Plaintiff] to transport Kenny." (Jacks Dep. at 67:22-68:3).

## B.     **Disputed Material Facts**

4.     Con-Air Corporation has no written or oral policy relating to the Family Medical Leave Act. (Burris Dep. 19:4-7; 19:17-18).

**RESPONSE:** Disputed. Burris testified that Conair provides leaves under the terms of the FMLA to eligible employees and further provides eligible employees with the FMLA

medical certification form necessary to certify the employee's medical need for leave.[3] (Deposition of Stephanie Burris, hereinafter "Burris dep.," at 20:10-21:23.)    Plaintiff has admitted that Conair communicated its FMLA policy to employees and that she was specifically aware she might be eligible for FMLA leave. (Jacks dep. at 51:8-52:1.)

> 12.    Con-Air Corporation received a faxed document from Dr. Kattner on June 6, 2003. (Burris Dep. 60:18-22). From June 2, 2003 through June 6, 2003 was preliminary [sic] approved for FMLA. (Burris Dep. 42:15-21).

**RESPONSE:** Disputed.  Stephanie Burris testified that the completed FMLA medical certification form evidently was faxed to Conair late on Friday, June 6, 2003, but that Burris did not see the facsimile until early on the morning of Monday, June 9, 2003. (Burris dep. at 60:18-22; 63:1-23).  Burris further testified that, based on Plaintiff's statement that Plaintiff's husband had hurt his back, Burris made the FMLA certification form available to Plaintiff for completion by her husband's physician.  In the meantime, Burris treated Plaintiff's absences in the week of June 2 as preliminarily excused under the FMLA, pending receipt of a completed medical certification that Plaintiff's absences were medically necessary to care for her husband as provided in the FMLA. (Burris Dep. at 61:10-62:9; *See* 29 C.F.R. 825.208(e)(2).)

> 15.    In response to the question "leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety or for transportation?" Dr. Kattner's response was "yes."  Additionally, Dr. Kattner stated "unable to drive due to pain level and medications." (Burris Dep. Exhibit 12).

**RESPONSE:** Disputed.  Plaintiff slightly but significantly misquotes question 8(a) as stated on the Certification of Health Care Provider form, and omits the comma that separates

---

[3]    As noted in Conair's motion for summary judgment, that form is the WH-380 form prescribed by the United States Department of Labor for that purpose under the FMLA, as is readily apparent by comparing the medical certification form in this case with the WH-380 form published by the U.S. DOL at 29 CFR Part 825, App. B.

"basic medical needs or safety" from "transportation."   (For convenience a copy of the Certification Form completed in this case is attached at Appendix 2.)  Question 8(a), on page two of the form, states:  "*if* leave is requested to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical needs or safety, or for transportation?"  *Id.*  In answer, Dr. Kattner stated, "yes" and "unable to drive due to pain level and medication."  Dr. Kattner did not state that Plaintiff needed to care for or assist her husband at any time other than when he needed to be driven somewhere.  *Id.*

> 17.    Mrs. Jacks never saw the filled out medical Certification form after she gave it to Dr. Kattner.  (Jacks Dep. 54:6-15).

**RESPONSE:** Disputed.  The statement that Plaintiff "never" saw the completed form is incorrect and misleading.   The Certification of Health Care Provider form is referenced in Plaintiff's own Complaint (¶¶7, 8) and is the central document in this case.  While Plaintiff testified that she did not see the completed form prior to the form being faxed to Conair (Jacks Dep. at 54:6-15), she clearly saw the completed form thereafter.  Indeed, the completed form was referenced as an attachment in a November 19, 2003 letter from Plaintiff's counsel to Conair, and was produced by Plaintiff during discovery.  (Burris Dep. at Ex. 12.)  Additionally, Plaintiff admitted during her deposition that on June 9, 2003 Burris told her precisely what the completed form stated, *i.e.*, that it only authorized Plaintiff to be off work when she needed to transport her husband.  (Jacks Dep. at 67:22-68:3.)

> 18.    Kenny Jacks had a serious medical condition as defined by the Family Medical Leave Act.   (Burris Dep. 66:7-67:2).   Con-Air Corporation is not disputing the serious medical condition suffered by Mrs. Jacks.  *Id.*

**RESPONSE:** Disputed.  Conair lacks knowledge of the medical condition of Plaintiff's husband, and does not dispute that he had a "serious health condition" as defined in the FMLA

for purposes of Conair's summary judgment motion *only*. Conair has specifically preserved the issue for trial, if necessary.[4]

> 19.    Ms. Burris had approved Mrs. Jacks' FMLA leave. (Burris Dep. 69:18-20).

**RESPONSE:** Disputed. When Plaintiff initially told Ms. Burris that Plaintiff would be off work because her husband had injured his back, Burris made an FMLA medical certification form available to Plaintiff and did not count her absences from work against her at that time, pending receipt of the completed medical certification regarding the medical need for Plaintiff's absence from work. (Burris Dep. at 61:10-62:9.) After receiving the completed medical certification, which indicated that Plaintiff did not need to be absent from work unless her husband required transportation, Burris advised Plaintiff that Conair would not excuse any absence unrelated to the legitimate transportation needs of Plaintiff's husband. Thus, Burris instructed Plaintiff to report for work the evening of June 9, 2003. (Jacks dep. at 66:13-68:19; Burris dep. at 74:17-75:13.)

> 23.    On Tuesday, June 10, 2003, Stephanie Burris terminated Sharon Jacks for "job abandonment". (Burris Dep. 76:20-21; 78:9-13, Exhibit 2); (Jacks Dep. 29:1-4; 77:7-11).

**RESPONSE:** Disputed. Stephanie Burris testified that the term "job abandonment" on a Conair personnel change form represented merely an administrative code indicating that Plaintiff was not eligible for rehire, because Plaintiff had refused to report as instructed for any of her shift on June 9, 2003. (Burris Dep. at 31:22-33:22, 78:14-79:1-6.) However, Burris was clear, and Plaintiff effectively admitted, that Plaintiff was terminated for incurring another attendance

---

[4]    As set forth fully in Defendant's motion for summary judgment, a boilerplate reference to a "serious health condition" on a certification form does not estop an employer from challenging the existence of a "serious health condition." *See Marchiesheck v. San Mateo*, 199 F.3d 1068, 1076-77 (9th Cir. 1999).

"occurrence," which resulted in her third final attendance warning in a single year period, which in turn called for Plaintiff's termination under Conair's employee attendance policy. (Jacks dep. at 26:19-27:17, 28:11-12, 30:4-10; 50:5-23, 77:7-14; Burris dep. at 44:10-45:11, 46:3-48:19, 83:11-86:18.) Plaintiff admitted that she had already received two final warnings for excessive absenteeism prior to June 9, 2003 and that she knew she would be terminated for another attendance "occurrence." (Jacks dep. at 26:19-27:17, 28:11-20 and dep. exs. 3-5.)

> 26.    Ms. Burris never gave Mrs. Jacks the opportunity to provide a corrected FMLA form. (Burris Dep. 80:20-81:23).

**RESPONSE:** Disputed. After realizing that the medical certification completed by the medical provider did not support the leave requested by Plaintiff, because it stated that Plaintiff's husband only required care for transportation, and even though Conair could have simply relied on this 'negative' certification, Burris promptly advised Plaintiff by telephone of what the certification did not authorize. (Jacks dep. at 66:20-68:11; Burris dep. at 72:16-73:8.) Plaintiff then told Burris that Plaintiff would ask the doctor's office to change the medical certification. (Jacks dep. at 68:4-7, 68:12-19; Burris dep. at 74:10-15.) However, Plaintiff never submitted a revised certification, and did not even contact Burris again regarding the matter. (Burris dep. at 79:9-16, 80:21-81:17.) Further, the doctor's office confirmed with Burris, and with Plaintiff herself, that the medical certification was correct as written, and that Plaintiff's husband only needed transportation assistance and did not require round-the-clock medical care. (Affidavit of nurse Jo Scott, hereafter "Scott Aff.," at ¶¶6-14, 19; Jacks Dep. at 68:18-70:6; Burris dep. at 68:22-69:6, 69:20-70:9.)

> 27.    Reinstatement was never a topic and it was reasonable for Mrs. Jacks to have understood that she was fired. (Burris Dep. 82:9-16).

**RESPONSE:** Disputed in part.   Stephanie Burris testified that, despite receiving a completed medical certification that did not excuse Plaintiff from work unless her husband required transportation, and even after a conversation with the doctor's nurse confirming that the completed form accurately reflected Plaintiff's husband's medical condition, Burris would have considered reinstating Plaintiff if Plaintiff had submitted a revised FMLA certification stating that her husband required round-the-clock medical care.  (Burris Dep. at 81:3-13.)

### C.   Immaterial Facts

20.    Mrs. Jacks was not required to call in sick on Monday, June 9, 2003. (Burris Dep. 70:14-19).

**RESPONSE:** It is immaterial whether Plaintiff needed to call in "sick" to Conair on June 9, 2003.  Plaintiff admitted speaking to Conair's Stephanie Burris hours before her shift on June 9, and that Burris explicitly told her that she was expected to report for her shift that evening.  Despite being so advised, Plaintiff admits that she did not report to work for any of her shift that night, and never called in to explain her absence, even though she finished transporting her husband to and from court that afternoon.  (Jacks Dep. at 75:8-76:11.)

21.    Sharon Jacks told Stephanie Burris that she needed to be off to take care of Kenny Jacks, her husband.  (Burris Dep. 73:9-15).

**RESPONSE:**  It is immaterial whether Plaintiff told Burris that she felt she needed to be off work continuously because she believed her husband required round-the-clock care.  Plaintiff's own subjective beliefs regarding her husband's medical needs are irrelevant.  The FMLA entitles an employee to be off work to care for her husband only when, in the medical opinion of her husband's health care provider, her absence is medically necessary to provide needed care.  The doctor's medical certification in this case authorized Plaintiff's absence from work only when she was needed to drive her husband during her work hours.

10

25.    Mrs. Jacks was never notified by Ms. Burris that if she had brought updated forms into her office or got a changed FMLA form, she could have gotten her job back. (Burris Dep. 80:20-81:23).

**RESPONSE:** It is immaterial whether Conair expressly told Plaintiff that it might consider her reinstatement if she provided an FMLA medical certification stating that it was medically necessary for Plaintiff to provide round-the-clock care for her husband. The FMLA does not require an employer to so inform a covered employee, and the uncontroverted evidence establishes that Plaintiff specifically asked her husband's health care provider to change the certification, but that the provider refused to do so. (Scott Affidavit at ¶¶13-14.)

28.    Mrs. Jacks contacted Stephanie Burris on November 19, 2005 through her attorneys, asking for her job back and the missed salary. (Burris Dep. 89:7-12).

**RESPONSE:** Evidence of Plaintiff's demands for settlement of her asserted claim and Conair's response thereto are inadmissible under Fed. R. Evid. 408. In any event, it is immaterial whether Plaintiff's counsel demanded Plaintiff's job back in settlement in November 2005, because the only medical information accompanying the referenced letter (which in fact was dated November 19, 2003, not 2005), was the *same* FMLA medical certification as previously submitted to Conair, which was already confirmed by the doctor's office to state that the only care Plaintiff's husband needed from Plaintiff was for transportation when he was "unable to drive due to pain and medication." (Burris Dep. 68:22-69:6, 69:20-70:9, 89:7-12, Exhibits 10, 12; Scott Aff. at ¶¶6-12.)

D.    **Additional Material Facts**

29    Plaintiff worked as a machine operator at Conair's Rantoul facility on the second shift from 3:45 p.m. to 12:15 a.m. Monday through Friday. (Jacks dep. at 10:23-11:2, 21:23-22:22; Burris Aff. ¶3.)

30.     Plaintiff knew that, under Conair's employee attendance policy, discipline escalates as an employee accrues certain numbers of absence "occurrences" during any 12-month period.  Specifically, four occurrences in a 12-month period result in a "final warning;" and five occurrences in a 12-month period result in "termination" of employment.  (Jacks Dep. Ex. 2, at III).  In addition, the policy provides that, even if an employee stops short of accruing five occurrences in a 12-month period:

> Any employee receiving three final warnings within a one-year period will be terminated.

*Id.*  Conair kept Plaintiff informed of how many "occurrences" she was accruing.  (Jacks dep. at 24:13-25:14.)

31.     Plaintiff received final warnings for excessive absenteeism under Conair's attendance policy on December 18, 2002 and April 23, 2003.  (Jacks dep. at 25:15-27:17 and Dep. Exs. 3 and 4.)  On May 5, 2003, Plaintiff received another written (but not final) warning which specifically reminded her that if she either accrued another occurrence or received a third final warning it would mean her discharge.  (Jacks dep. at 27:18-28:20 and Dep. Ex. 5.)

32.     Thus, as of the beginning of June 2003, Plaintiff knew that any further unexcused absence of even less than a full day could result in the immediate termination of her employment.  (Jacks dep. at 50:5-23.)

33.     Plaintiff did not report to work for her regular evening shift on June 2, 2003.  Instead, Plaintiff called Stephanie Burris, Conair's Human Resource Manager, stating that she would need to be off work to care for her husband who had injured himself.  Accordingly, Burris made an FMLA medical certification form available for Plaintiff to take to her husband's physician for completion and return.  (Jacks dep. at 52:2-22; Burris dep. at 61:10-62:9.)  Plaintiff

12

did not speak to Burris again until Monday, June 9. (Burris dep. at 61:10-16; Jacks dep. at 62:17-23 and 63:2-15.)

34.    On June 4, 2003, Plaintiff's husband was referred to Dr. Keith Kattner in Bloomington, Illinois for evaluation and treatment of his injury. (Jacks dep. at 48:5-49:10, 52:23-54:1.) Plaintiff accompanied her husband to his appointment with Dr. Kattner on June 5, 2003, and took with her the FMLA Medical Certification form that Conair had given her. (Jacks dep. at 53:3-12.)

35.    After Dr. Kattner saw Kenny Jacks on June 5, Dr. Kattner told Plaintiff that his nurse would take care of her FMLA paperwork. Accordingly, Plaintiff handed Dr. Kattner's nurse the medical certification form, and did not again see the form as completed by Dr. Kattner's office until after Dr. Kattner's office faxed it to Conair. (Jacks dep. at 60:10-62:16.)

36.    The completed FMLA medical certification form was faxed to Conair late on Friday, June 6, 2003, but Burris first saw the facsimile early on the morning of Monday, June 9, 2003. (Burris dep. at 63:1-23.)

37.    Paragraph 8 of the FMLA Medical Certification form asked Dr. Kattner's office to answer the following question:

> If leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety, or for transportation?

*(See* Appendix 2, p. 2). In the completed form faxed to Conair, that question was answered:

> Yes. Unable to drive due to pain level and medication.

*Id.* The completed form received by Conair did *not* state that Sharon was needed to care for or assist Kenny at any time other than when Kenny needed to be driven somewhere. *Id.*

38.    On the morning of Monday, June 9, 2003, Burris attempted to phone Plaintiff to discuss with her that the completed FMLA medical certification indicated that Plaintiff was authorized to miss work only when needed to drive her husband.  Plaintiff did not answer so Burris left her a message.  (Burris dep. at 70:19-72:4.)

39.    On Monday, June 9, 2003, Plaintiff's husband was scheduled to appear in Champaign County Circuit Court, in Urbana, Illinois at either 10:00 a.m. or 1:00 p.m.  (Jacks dep. at 65:4-66:2.)  Plaintiff accompanied her husband to the court appearance and, from there, at lunch time, phoned Burris regarding the FMLA paperwork submitted by Dr. Kattner's office.  (Jacks dep. at 62:17-63:15 and 66:13-67:4; Burris dep. at 71:9-72:21.)

40.    During that phone conversation, Burris told Plaintiff that the completed medical certification indicated that Plaintiff qualified for FMLA leave only when needed to drive for her husband but that she did not qualify for leave to care for him around the clock.  Therefore, Burris told Plaintiff to report for work that evening.  (Jacks dep. at 66:20-68:11; Burris dep. at 72:16-73:8.)  However, Plaintiff told Burris that Plaintiff would ask Dr. Kattner's office to change the medical certification.  (Jacks dep. at 68:12-19; Burris dep. at 74:10-15.)

41.    Plaintiff phoned Dr. Kattner's office that afternoon and spoke to his nurse about the completed FMLA medical certification.  (Jacks dep. at 68:18-70:6.)  The nurse she spoke to was Martha Jo Scott, RN (hereinafter "Nurse Scott").  (Appendix 3; Scott Aff. ¶6.)  Plaintiff asked Nurse Scott to change the FMLA medical certification to state that Plaintiff needed to care for her husband on a full-time basis, rather than only when he needed transportation.  Nurse Scott refused to do so, telling Plaintiff that, based on confirmation from Dr. Kattner, the document was correct as it was and that her husband could stay home alone and merely should not drive.  (Scott Aff. at ¶¶13, 19.)

14

42.    Conair's Ms. Burris also spoke to Nurse Scott on June 9, 2003.  Burris asked Nurse Scott the meaning of the notation "Unable to drive due to pain level and medication" in relation to Plaintiff's leave request.  (Scott Aff., ¶¶10-11; Burris dep. at 68:22-69:6, 69:20-70:9.) After consulting both Dr. Kattner and the medical records, Nurse Scott "told Ms. Burris that Mr. Jacks only required transportation by his wife, not full-time care." (Scott Aff. ¶12.)

43.    Shortly thereafter, Burris again spoke by telephone with Plaintiff, telling her that Dr. Kattner's office had confirmed that Plaintiff did not need to provide round-the-clock care for her husband, but was needed only to transport him when he needed to be driven somewhere. Accordingly, Burris instructed Plaintiff to come in to work later that day.  (Jacks dep. at 66:13-67:10; Burris dep. at 75:1-76:1.)

44.    Although Plaintiff does not recall precisely when she and her husband left the courthouse on June 9, 2003, she says they drove directly home and arrived at their residence "before dinner." (Jacks dep. at 74:23-75:9.)

45.    However, Plaintiff did not report to work for any of her shift that evening, which did not end until 12:15 a.m. the next morning.  (Jacks dep. at 75:10-12, 76:20-77:14.)

46.    Plaintiff's failure to report for work even after she completed transporting her husband on June 9, 2003 constituted another absence "occurrence" calling for a third "final warning" in the last twelve months under Conair's attendance policy.  Therefore, Plaintiff was discharged for accruing three final warnings in a one-year period.  (Jacks dep. at 26:19-27:17, 30:4-10, 50:5-23, 77:7-14; Burris dep. at 44:10-45:11, 46:3-48:19, 83:11-86:18.)

47.    However, Burris did not actually discharge Plaintiff until June 10, 2003, after determining that Plaintiff did not report for or call in during any of her shift on the evening of June 9, 2003.  (Burris dep. at 76:20-77:23.)

15

48.    On June 10, 2003, Plaintiff again contacted Dr. Kattner's clinic regarding the FMLA medical certification. Once again, Dr. Kattner's Nurse Scott refused on behalf of the clinic to change the document and reiterated that, although Plaintiff might need to take off work to drive her husband to scheduled appointments, her husband's "other needs could be handled before and after work." (Scott Aff. at ¶¶14-17.)

49.    Plaintiff never again contacted Burris regarding the FMLA medical certification. (Burris dep. at 79:7-23.)

## III.    ARGUMENT

### A.    Standard Of Review

When both parties file a motion for summary judgment, the court must consider each motion independently and construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made. *Premcor USA, Inc. v. Am. Home Assur. Co.*, 400 F.3d 523, 526 (7th Cir. 2005). However, when a plaintiff claiming a violation of the FMLA lacks evidence sufficient to create a genuine issue of fact in support of a necessary element of a claim, summary judgment is appropriate against the plaintiff. *See Hypes v. First Commerce Corp.*, 134 F.3d 721, 725 (5th Cir. 1998) (affirming summary judgment on FMLA claim when medical certification did not support employee's explanation). Further, the court cannot grant summary judgment for Plaintiff unless Plaintiff meets her burden to prove through specific citations to "pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any," each *prima facie* element of her FMLA interference claim. *See Hoffman v. Professional Med. Team*, 394 F.3d 414, 419 (6th Cir. 2005) (there can be no finding of an intentional violation by an employer when there is no evidence suggesting that an employer intentionally adopted an incorrect reading of a certification in order to deny an employee rights

under the FMLA). Plaintiff has completely failed to do so here, and instead her motion and related materials show that it is Conair that is entitled to judgment.

### B.    Plaintiff Fundamentally Misinterprets The FMLA, Including The Employee's Burdens Under The Act

#### 1.    The 15-Day Time Limit Does Not Preclude An Employer From Acting Upon Receipt Of A Timely Certification

Plaintiff's motion first seems to argue that the FMLA barred Conair from treating as unprotected any absence she incurred within fifteen days after Conair gave her the medical certification form to be completed, even once the form was completed and submitted showing that her absence was *not* protected. That is an obviously and fundamentally incorrect statement of the law.

In effect, Plaintiff contends that, for a period of at least fifteen days, the FMLA entitled her to continue submitting completed medical certifications to Conair, one after another until hopefully obtaining one that said what she wanted it to say, and that during that time Conair could take no action on her absences. In support, Plaintiff relies on but improperly conflates two entirely different provisions of the regulations implementing the FMLA, 29 C.F.R. §825.305(b) relating to initial medical certifications, and 29 C.F.R. §825.305(d) regarding "incomplete" certifications.

29 C.F.R. §805.305(b) states that when an employer exercises its option to require a medical certification justifying FMLA time off, the employee "must provide the requested certification to the employer within the time frame requested by the employer" which must be at least 15 calendar days from the date the employer requests the certification. This does not, however, mean that an employee has an absolute right to continue to submit additional certifications within that 15-day window, or that an employer is precluded from taking any

17

action when an employee submits a completed medical certification before fifteen days have elapsed. To the contrary, the Act requires the employer to "promptly" notify the employee whether FMLA leave is approved as soon as the employer has received sufficient information to make that determination. *See* 29 C.F.R. §825.208(b)(1). Significantly, in cases of unforeseeable absences, and even when an employer provisionally designates a leave of absence as FMLA – qualifying pending receipt of a certification, as Conair did in this case, an employer *violates* the Act by continuing to designate the leave as FMLA if, "upon receipt," the certification *fails to support* the presumption that the leave was for a qualifying reason. 29 C.F.R. §825.208(e)(2).

The FMLA itself declares that its purpose is to "balance the demands of the workplace with the needs of families" in a manner that "accommodates the legitimate interests of employers." 29 U.S.C. §2601(b). Therefore, the provision of the Act authorizing an employer to require that an employee submit a medical certification of the need for leave, 29 U.S.C. §2613, is "designed as a check against employee abuses of leave." *See* S. Rep. No. 103-3 at IV, "Certification" (1993). While the Act itself simply states "the employee shall provide" a requested certification "in a timely manner," the 15-day regulation defines the point at which an employer may consider a certification submitted by an employee as untimely. *See* 29 U.S.C. §2613; 29 C.F.R. §825.305(b); 29 C.F.R. §825.311(b) (if the employee fails to timely produce a certification, "the leave is not FMLA leave").

*Roger v. Dade Behrling, Inc.*, 210 F.3d 776 (7th Cir. 2000), one of only two cases cited by Plaintiff, is easily distinguished from the instant case because it merely reiterates the general rule regarding timely certifications under the Act. The *Dade Behrling* opinion does not address the issue in this case, namely, the consequences of a 'negative' certification, or what Plaintiff now attempts to characterize as an 'incomplete' certification. In *Dade Behrling*, the plaintiff failed to

submit *any* certification within the 15-day deadline, so the dispute centered on when the 15-day deadline began to run. *Id.* at 778. *Dade Behrling* thus teaches that an absence is not FMLA protected if the employee fails to submit a proper medical certification within 15 days. In this case, however, Plaintiff submitted a completed certification from Dr. Kattner's clinic within 15 days. Thus, the FMLA required Conair to designate whether Plaintiff's leave was protected by the FMLA upon receipt of that completed certification. *See* 29 C.F.R. §825.208(a), (e)(2). Conair did so. In fact, to the extent that *Dade Behrling* has any probative value regarding the issues in this action, it supports Conair's cross motion for summary judgment, as the Seventh Circuit expressly affirmed that a trial court should enter summary judgment in favor of an employer when the employee's claimed FMLA entitlements do not exist as a matter of law. *Id.* at 779.

In arguing that Conair unlawfully denied her the opportunity to cure what she now characterizes as an "incomplete" certification, Plaintiff similarly ignores the actual language of the applicable FMLA regulation. The regulations state only that "the employer shall advise an employee *whenever the employer finds a certification incomplete*, and provide the employee a reasonable opportunity to cure such deficiency." 29 U.S.C. §825.305(d) (emphasis added). In this case, Conair did not find Plaintiff's certification incomplete and it was not incomplete. Under the familiar canon of construction, *expression unius est exclusion alterius* is (to express or include the one thing implies the exclusion of the other), Plaintiff is obviously incorrect to suggest that the FMLA assured her an opportunity to "cure" a medical certification that Conair properly found to be complete but that *Plaintiff* now – after the fact - characterizes as incomplete.

In any event, in answer to Plaintiff's arguments, it has been held that the 15 day time period in 29 C.F.R. §825.305(b) does not continue to run in favor of an employee once the employee submits a completed medical certification, and that the employer in such a case is not precluded from denying FMLA leave if the certification does not support the leave request, even if this means the employee will be terminated for excessive absenteeism. *Dillon v. Carlton*, 977 F. Supp. 1155, 1159 n.9 (M.D. Fla. 1997) (employer lawfully terminated employee for failing to work the next shift after being notified that her requested leave was denied). Further, in balancing employer and employee rights and responsibilities under the act, a court cannot impose "out of context" regulations relating to a "fifteen day window" to "second, third, and fourth opportunities given to an employee to submit a certification." *Baldwin-Love v. Electronic Data Sys. Corp.*, 307 F. Supp. 2d 1222, 1233 (M.D. Ala. 2004). This reasoning has particular force in the Seventh Circuit, where the burden is clearly upon the employee, not the employer, to correct any perceived 'mistake' in a certification after the employer advises the employee it is relying on the certification. *Stoops v. One Call Comm'ns*, 141 F.3d 309, 313 (7th Cir. 1998).

Moreover, as demonstrated above, the uncontroverted facts establish that Plaintiff was *unable* to obtain an altered medical certification that would have justified the continuous time off she had taken and insisted on continuing to take. Plaintiff tried to get Dr. Kattner's clinic to change her certification, both before and after Conair acted on it, but the clinic refused to make the change she demanded. Accordingly, giving Plaintiff the remainder of the fifteen-day period to produce a revised medical certification would have been futile; it could have availed her nothing.

### 2.    Plaintiff Had No Right To "Choose" to Take More FMLA Leave Than Was Supported by Her Medical Certification

Plaintiff also argues that, because Dr. Kattner certified that her husband had a serious health condition *sometimes* requiring her care, she had the prerogative under the FMLA to choose whether she wanted full-time leave or only leave when her care was needed. That also is not the law.

The scope of an employee's right to an FMLA leave is defined and limited by the certification requirements of 29 U.S.C. §2613. Under the Act, it is the employer's right to request a medical certification, *and* the employer's right to deny a leave request when it is not "supported by a certification issued by the health care provider." *Id.* The Act expressly states that an employer should deny such leave when, as in this case, the employer has made a preliminary designation that a leave is qualified under the FMLA, but the medical certification later fails to support the requested leave. 29 C.F.R. §825.208(e)(2). Whereas Plaintiff told Conair that she thought her husband required round-the-clock care, the document completed by Dr. Kattner stated that Plaintiff's husband required care only when he was "unable to drive due to pain level and medication." Moreover, Dr. Kattner's office later clarified this meaning to both Conair and Plaintiff, before Plaintiff's discharge.

Thus, Conair's actions were entirely consistent with both the letter and intent of the FMLA. The Act makes it clear that it is the information stated on the certification form that defines the scope of an employee's leave, not the employee's choice of leave. In this case, Dr. Kattner clearly wrote "unable to drive due to pain level and medication" in response to the

question that asked if a leave was required for "transportation."[5]   Although Dr. Kattner also indicated that Plaintiff's husband would be "seeing pain management for injections," and that he was scheduled for another office visit in a month, that was the only statement on the certification indicating why and when Plaintiff's husband might need Plaintiff's care.   There was absolutely nothing else on the form even suggesting that Plaintiff's husband was incapable of self-care and, therefore, required full-time or round-the-clock assistance.   Thus, Plaintiff was not justified under the FMLA in demanding continuous time off work to care for her husband. *Raymond v. Albertson*, 38 F.Supp. 2d 866, 870 (D. Nev. 1999) (employee knowingly risked termination under attendance policy when he stayed home because his daughter was "sick," when the daughter's illness was not FMLA qualifying).   Under the Act itself, and irrespective of the amount of time *requested* by an employee, the certification requirement specifically defines "the amount of time an employee is needed to care" for a family member. *See* 29 U.S.C. §2613 (b)(4)(A).   In this case, Dr. Kattner clearly limited Plaintiff's leave to occasions when her husband needed to but was "unable to drive due to pain level and medication."   His nurse confirmed that meaning of the certification to both Conair and Plaintiff, and refused Plaintiff's request to broaden the certification.   Indeed, even to date, Plaintiff has failed to set forth any medical evidence, other than her own unsupported opinion, that her husband needed her full-time care.

       Under Seventh Circuit precedent, where an employer receives a medical certification indicating that the employee does not need to miss work, the employer may reasonably rely on

---

[5]      While many employers like Conair have chosen to adopt the Department of Labor Form, WH-380, use of that form is optional.   The information stated by the health care provider determines whether a leave is intermittent, not a specific question or response.

that certification and does not violate the FMLA by terminating the employee consistent with an attendance policy. *Stoops v. One Call Comm'ns, supra*, 141 F.3d at 313. As *Stoops* makes clear, the mechanics of the FMLA are relatively simple. It is the employer's obligation to explain the protections of the Act to an employee upon being placed on notice of the need for a leave. 29 C.F.R. §825.302-3. In turn, if the need for the leave is not foreseeable and the employer requests certification, as in this case, it is the employee's burden to provide sufficient documentation to excuse an absence under the FMLA. §825.305(b). It is then the employer's obligation to designate the leave as "FMLA" or "non-FMLA," based on the medical certification. 29 CFR §825.208(e)(2).

In *Stoops*, the Seventh Circuit rejected an employee's attempt to place a greater burden on the employer. *Id.* at 313-314. This is precisely what Plaintiff is trying to do in this case, by urging this Court to expand her leave rights beyond and, in fact, in contravention of what was authorized by Dr. Kattner's certification. As *Stoops* conclusively establishes, the employee's burden to submit medical certification to excuse an absence cannot be shifted to the employer. *Stoops*, 141 F.3d at 313. *See Dittle v. USPS,* 2005 U.S. Dist. LEXIS at *25 (despite an employee's belief that a longer absence was necessary, a certification that covered only an intermittent absence did not an excuse an employee, who was properly terminated under an employer's attendance policy). Nor can Plaintiff support her theory that she had the right to "choose" the duration or continuousness of her leave. Where an employer requests an FMLA certification, and the certification indicates that the employee is not entitled to the requested leave, the employer is entitled to rely on that certification and may properly terminate the employee, particularly when the employee knows that the employer is relying on this "negative

certification" and also knows that "continued absences" will lead to "being fired" under an attendance policy. *Stoops*, 141 F.3d at 313-14.

**C.    The Material Facts Omitted By Plaintiff Prove That, Even If Dr. Kattner's Certification Were Deemed Incomplete, Her Claims Necessarily Fail**

In relying entirely on *Kaufmman v. Federal Express Corp.*, 426 F.3d 880 (7th Cir. 2005) in support of her arguments, Plaintiff completely ignores the *Stoops* case cited therein, perhaps because, as explained above, *Stoops* dooms Plaintiff's claims as a matter of law.  In addition, however, Plaintiff's motion fails to set forth all the facts that are truly material in this action. The real facts in this case are not only strikingly different than *Kauffman,* but also prove that Plaintiff cannot sustain her allegation that Conair did not comply with the FMLA.

In filing this motion, Plaintiff has omitted very significant facts regarding her employment with Conair, including her two final attendance warnings before the incident leading to her discharge, and her admission that she knew, as of June 2, 2003 that she could be terminated for even a single additional attendance "occurrence."  Plaintiff also ignores the fact that, even after receiving a certification that clearly did not excuse Plaintiff's June 2 through June 6 absences, Conair did not immediately hold Plaintiff accountable for them.  On June 9, Conair could have simply considered Dr. Kattner's certification as the 'negative certification' it was, and terminated Plaintiff based on her absences in the previous week.  But Conair chose not to apply the certification retrospectively, and instead took additional steps prior to terminating Plaintiff to give her as much leeway as reasonably possible under its attendance policy.  Upon reviewing the certification, and seeing that it did not support a full-time leave of absence, Conair so notified Plaintiff.  Next, even after confirming with Dr. Kattner's office that the certification

24

meant what it said, Conair still gave Plaintiff the benefit of the doubt that she might report for at least part of her shift on June 9.

In addition, Plaintiff omits the facts that she had conversations with Conair after she submitted the completed certification but prior to the start of her shift on June 9, 2003, the date of her termination. Plaintiff further ignores the fact that, after Conair and she both confirmed with Dr. Kattner's office that the certification was correct as written and would not be changed, Conair told Plaintiff that she needed to report for her shift that evening, and that her absence unrelated to the transportation needs of her husband would result in her termination. Plaintiff also overlooks her admission that she returned home from driving her husband to his court appearance "before dinner" on June 9, 2003, yet failed to report to work any of her shift which did not end until 12:15 a.m. the next morning. Perhaps most significantly, Plaintiff omits that she personally spoke with Dr. Kattner's office, which specifically refused her request to change the certification, both before and after she was fired.

Conair has provided specific documentary proof regarding these matters. As to the final item, Plaintiff was explicitly told by Dr. Kattner's nurse, both before and after her termination, that her husband did not require round-the-clock medical care and, specifically, that his "other needs could be handled before and after [Plaintiff's] work." Therefore, even ignoring the affirmative actions taken by Conair to ensure that it did not violate any possible entitlement under the FMLA, Plaintiff's argument that Conair should have had allowed her additional time to submit a contradictory certification is pointless. *See, Collins v. Merck-Medco RX Serv.*, 2001 U.S. Dist. LEXIS 15143 at *9 (N.D. Tex. Sept. 24, 2001) (rejecting employee's claim that employer should have waited to terminate employee until it received additional information when later information again stated that the employee was not entitled to the requested leave

such that no prejudice resulted to the employee). This is not a case like *Kauffman,* where the employer appeared anxious to terminate the employee by first denying a certification as untimely because the employee "did not have the certification in hand," and then refusing to consider a supplemental medical opinion. In this case, the only certification ever received by Conair, either before or after Plaintiff's termination, was Dr. Kattner's June 6, 2003 certification, which he refused to alter and which did not justify Plaintiff's total absence from work on June 9.

Because the material facts omitted by Plaintiff establish that the FMLA entitlement claimed by Plaintiff simply did not exist, and also because Conair clearly acted at all times in good faith by taking affirmative actions to ensure that it did not violate either the letter or spirit of the FMLA, this Court should deny Plaintiff's summary judgment motion, and instead enter judgment in Conair's favor as a matter of law.

## IV.    **CONCLUSION**

For the reasons set forth above, Defendant Conair Corporation respectfully requests that this Court deny Plaintiff's Motion for summary judgment in its entirety, and instead, consistent with Conair's cross motion, grant summary judgment in Conair's favor on Plaintiff's entire Complaint, because the undisputed facts clearly establish that Conair is entitled to judgment as a matter of law.

<div style="margin-left: 40%;">

Respectfully submitted,

CONAIR CORPORATION

</div>

Date:  <u>May 22, 2006</u>        By:   <u>*s/ Kerry Lin Davidson*</u>
                                          Kerry Lin Davidson Bar Number: 6277341
                                          Attorney for Defendant
                                          Meckler Bulger & Tilson LLP
                                          123 North Wacker Drive
                                          Chicago, Illinois 60606
                                          Tel:    312/474-7900
                                          Fax:   312/474-7898
                                          email:  kerry.davidson@mbtlaw.com

N:\4161\pleading\RESP-OppPltfMotSumJdgmnt.doc

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| SHARON JACKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. : 04-2230 |
| | ) |
| CONAIR CORPORATION, | ) Judge Michael P. McCuskey |
| | ) Magistrate Judge David G. Bernthal |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

I, Kerry Lin Davidson, an attorney, certify that on May 22, 2006, **Defendant Conair Corporation's Response in Opposition to Plaintiff's Motion for Summary Judgment** was served by the ECF system upon:

> David A. Kleczek
> Kleczek Law Offices
> 321 NE Madison
> Peoria, Illinois 61603

By:   *s/Kerry Lin Davidson*

Kerry Lin Davidson
Meckler Bulger & Tilson LLP
123 North Wacker Drive
Chicago, Illinois 60606
Tel:    (312) 474-7900
Fax:    (312) 474-7898

N:\4161\pleading\COS-RespOppPltfMotSumJdgmnt.doc