UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| SHARON JACKS, | ) |
| | ) Case No. : 04-2230 |
| Plaintiff, | ) |
| | ) Judge Michael P. McCuskey |
| v. | ) Magistrate Judge David G. Bernthal |
| | ) |
| CONAIR CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**INDEX OF APPENDICES TO DEFENDANT CONAIR CORPORATION'S RESPONSE
IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

1. Affidavit of Stephanie Burris

2. Plaintiff's FMLA Medical Certification Form

3. Affidavit of Martha Jo Scott, R.N. (including exhibits)

4. Deposition of Sharon Jacks, excerpts and exhibits

5. Deposition of Stephanie Burris, excerpts and exhibits

6. Electronic case authority cited in supporting memorandum

N:\4161\pleading\Index-Appendices-OppMSJ.doc

# APPENDIX 1

**Affidavit of Stephanie Burris**

## Affidavit of Stephanie D. Burris

Stephanie D. Burris, being first duly sworn, on oath states as follows:

1. My name is Stephanie D. Burris. I reside in Savoy, Illinois. I am competent to testify to the following facts.

2. Since April 2001, I have been employed by Conair Corporation as the Human Resource Manager at Conair's facility in Rantoul, Illinois. At that facility, Conair manufacturers a variety of personal care and beauty products such as shampoos, conditioners, deodorants, lotions and gels.

3. Sharon Jacks was employed at Conair's Rantoul facility as a line operator from May 2001 until June 9, 2003, when Ms. Jacks' employment was terminated under Conair's employee attendance policy.

FURTHER AFFIANT SAYETH NOT.

_Stephanie D. Burris_
Stephanie D. Burris

SWORN TO AND BEFORE me
This 1st day of May, 2006.

_Mary T. Murphy_
Notary Public

"OFFICIAL SEAL"
Mary T. Murphy
Notary Public, State of Illinois
My Commission Expires May 18, 2006

N:\4161\miscdam\aff burris01.doc

# APPENDIX 2

## Plaintiff's FMLA Medical Certification Form

06/06/2003 16:24 FAX 309 661 4881          NEURO                                    ☒001

Conaie
Shellhouse Dr.
Rantoul Ill.
61866



## Certification of Health Care Provider
### (Family and Medical Leave Act of 1993)

1. Employee's Name: __SHARON S. JACKS__

2. Patient's Name (if different from employee): __KENNY JACKS__

3. The attached sheet describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition¹ qualify under any of the categories described? If so, please check the applicable category:

   (1)__ (2)✓ (3)__ (4)__ (5)__ (6)__ or None of the above__

4. Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria of one of these categories:
   Pt will be seeing pain management for injections and then to physical therapy

5. a. State the approximate date the condition commenced, and the probable duration of the condition (and also the probable duration of the patient's present incapacity² if different):
      Began 5-29-03    duration undetermined
      next office visit 6-23-03
   b. Will it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition (including for treatment described in Item 6 below?

   If yes, give the probable duration:

   c. If the condition is a chronic condition (condition #4) or pregnancy, state whether the patient is presently incapacitated² and the likely duration and frequency of episodes of incapacity²:

6. a. If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments:

   If the patient will be absent from work or other daily activities because of treatment on an intermittent or part time basis, also provide an estimate of the probable number and interval between such treatments, actual or estimated dates of treatment if known, and period required for recovery if any:

   b. If any of these treatments will be provided by another provider of health services (e.g., physical therapist), please state the nature of the treatments:

---

¹Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.

²"Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom.

c. If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment):

7. a. If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee unable to perform work of any kind?

   b. If able to perform some work, is the employee unable to perform any one or more of the essential functions of the employee's job (the employee or the employer should supply you with information about the essential job functions)? _____ If yes, please list the essential functions the employee is unable to perform:

   c. If neither "a" nor "b" applies, is it necessary for the employee to be absent from work for treatment?

8. a. If leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety, or for <u>transportation</u>?  yes   Unable to drive due to pain level and medication

   b. If no, would the employee's presence to provide psychological comfort be beneficial to the patient or assist in the patient's recovery?

   c. If the patient will need care only intermittently or on a part-time basis, please indicate the probable duration of this need:

_____     __6-6-03_____
(Signature of Health Care Provider)                    (DATE)

_1015 S Mercer Ave_____        _309 662 7501_____
(Street Address, City, State, Zip Code)                (Telephone number)
Bloomington  IL  61701

TO BE COMPLETED BY THE EMPLOYEE NEEDING FAMILY LEAVE TO CARE FOR A FAMILY MEMBER:

State the care you will provide and an estimate of the period during which care will be provided, including a schedule if leave is to be taken intermittently or if it will be necessary for you to work less than a full schedule:

_Sharon Jacks_____      _6-  -03_____
(Employee Signature)                                  (Date)

Leave is hereby (approved)/disapproved  _Stephanie O'Brien_   _6/9/03_
                                         Human Resource Manager    Date

for dr. appts, therapy etc. Per nurse, patient does not require 24/7 care.

# APPENDIX 3

**Affidavit of Martha Jo Scott, R.N.
(including exhibits)**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| SHARON JACKS,<br><br>    Plaintiff,<br><br>v.<br><br>CONAIR CORPORATION,<br><br>    Defendant. | Case No. : 04-2230<br><br>Judge Michael P. McCuskey<br>Magistrate Judge David G. Bernthal |

### AFFIDAVIT

I, Martha Jo Scott, first being duly sworn on oath, depose and state as follows:

1. I make this Affidavit on personal knowledge and, if called as a witness, I can competently testify to the matters contained herein.

2. Although my name is Martha, I generally use my middle name, "Jo," in both written and oral communications.

3. I am a registered nurse and was employed by Central Illinois Neuro Health Sciences, located at 1015 S. Mercer Avenue in Bloomington, Illinois, 61701, between the dates of March 2002 and November 10, 2005.

4. In addition to the clinic facility located at 1015 S. Mercer Avenue in Bloomington, Illinois 61701, Central Illinois Health Sciences also maintains a clinic located in Clinton, Illinois, which is visited by the physicians and their nurses.

5. During my employment with Central Illinois Neuro Health Sciences, my job functions included assisting Dr. Keith A. Kattner, D.O., a physician at Central Illinois Neuro Health Sciences.

6. In June of 2003, one of my job duties was to answer telephone calls from patients as a "phone nurse." The function of a "phone nurse" is to provide a direct medical response to patient inquiries when physicians and their nurses are seeing patients or otherwise unavailable.

7. In the normal and ordinary course of my employment with Central Illinois Health Sciences, I created and maintained notes of all telephone conversations with patients. These notes reflected the substance of my discussions, including any follow-up actions, where applicable.

8. I entered my notes either directly in the patient's chart as a "Progress Note" or into an electronic "Work Clinical Tasks" database, where each time and dated entry was authenticated by my electronic signature, "JoScott RN," or "Created by Jo." When I created supplemental entries in the "Work Clinical Tasks" database, I wrote "see phone notes" in the Progress Notes section of the patient's chart.

9. The attached documents, Exhibits 1-4, accurately reflect conversations relating to the treatment and care of Mr. Kenneth Jacks, who was at the time, a patient of Central Illinois Neuro Health Sciences. Exhibits 1-3, are true and authentic copies of the Work Clinical Tasks created by me on the dates of June 9 and June 10, 2003. Exhibit 4 is a true and correct copy of the Progress Notes maintained in Mr. Jacks' file for the period of June 6, 2003 to June 11, 2003.

10. On June 9, 2003, I received notice that Mr. Jacks' wife, Sharon Jacks, had telephoned the clinic asking us to contact her employer, Conair, regarding an FMLA certification form relating to the care of her husband. *See Exhibit 1, 06/09/03, 15:20.*

11. As reflected in my notes of June 9, 2003, I contacted Ms. Stephanie Burris, a human resources representative at Conair, who wanted clarification regarding information stated on an FMLA certification form regarding the care of Ms. Jacks' husband. Specifically, Ms.

12. Burris wanted to know whether Mr. Jacks' condition required 24-hour care or whether his medication and surgical condition only restricted his ability to drive. *See Exhibit 1, 06/09/03 15:20.*

12. Upon an independent review of the status of Mr. Jacks' surgery and medical condition as stated in his medical chart, and in consultation with Dr. Kattner, I confirmed that Mr. Jacks did not require constant care. Therefore, as reflected in my June 9, 2003 notes, I told Ms. Burris that Mr. Jacks only required transportation by his wife, not full-time care. *See Exhibit 1, 06/09/03 15:20.*

13. Later on June 9, 2030, I received a call from Ms. Jacks. Ms. Jacks asked the clinic to change the FMLA form to state that she needed to care for her husband on a full-time basis. However, I told her that the completed form accurately reflected her husband's medical condition and that it would stand as written because Mr. Jacks could stay home alone, but should not drive. After talking with Ms. Jacks, I updated my notes in the Work Clinical Task database. *See Exhibit 1, 06/09/03 15:38.*

14. The next day, I spoke again to Ms. Jacks regarding the FMLA form completed by the clinic. I again told Ms. Jacks that upon review with Dr. Kattner, her husband did not require full-time care, that she might need to take off work to take her husband to scheduled appointments, but that "other needs could be handled before and after work." *See Exhibit 2, 06/10/03 09:10.*

15. Approximately twenty minutes later, I received a call from Dr. Kattner's nurse, Karen Stoller, who stated that Ms. Jacks had attempted to reach Dr. Kattner at the remote clinic in Clinton, Illinois and reportedly threatened his other nurse, Rita Karczewski. Therefore, I called the Jacks' residence, and told Mr. Jacks that patients were not to contact the clinics

3

directly and again stated that the FMLA form was correct as written. *See Exhibit 2, 06/10/03, 09:30.*

16. I then attended a meeting with Karen Stoller, Rita Karczewski, and Karen Sager, Director of Clinical Operations. Dr. Kattner had directed me to "blacktape" Mr. Jacks' chart. A "blacktaped" chart means that the patient will no longer be seen at the clinic. All pending appointments are cancelled, and all telephone inquiries are referred to the Director of Clinical Operators or the Administrator, who was at the time Mercedes Inman.

17. On June 10, 2003, I noted in both the Work Clinical Tasks electronic database and in Mr. Jacks' Progress Notes that his chart was "blacktaped," and that no return visits were to be scheduled. Based on the meeting with Karen Sager, I am also personally aware that Mr. and Ms. Jacks received notice, both orally and in writing, that Dr. Kattner would not see Mr. Jacks again. *Exhibit 3, 06/10/03, 14:52, Exhibit 4, 6/10/03, 6/11/03.*

19. The progress notes for the period of June 9, 2003 to June 11, 2003, in combination with my phone notes in the Work Clinical Tasks Database, accurately reflect my recollection of the events relating to the FMLA certification form completed by Central Illinois Neuro Health Sciences, my conversations regarding Ms. Jacks employment, and the reason for the termination of the patient relationship between Central Illinois Neuro Health Sciences and Mr. Jacks. *See Exhibits 1-4.*

FURTHER AFFIANT SAYETH NOT.

MARTHA JO SCOTT, RN

SUBSCRIBED AND SWORN TO BEFORE
ME THIS 21 DAY OF FEBRUARY, 2006.

NOTARY PUBLIC

N:\4161\pleading\AFF-Scott.doc

"OFFICIAL SEAL"
Andrew S. deWard
Notary Public, State of Illinois
McLean County
My Commission Expires July 6, 2009

4

**Exhibit 1**
**Affidavit of Martha Jo Scott, R.N.**

```
User # : 48                    WORK CLINICAL TASKS                          [Jo]
Case # :
[WORK ISSUES]
Pri    Date     Patient   Name              Description              Rem  Type
 2   06/09/03  27692.0   JACKS, KENNETH    WORK ISSUES               Y    WORK
Rita:
1520:  Gail from Foundation got a call from Mrs. Jacks requesting this office
call Stephanie Burris at 217-892-8400 at Conair about the FMLA forms.  Mrs
Jacks was asking to be home with her husband 24hours/day and would lose her
job if not clarified.  Call to above number and Stephanie wanted to know if
Mrs. Jacks could be gone from work only to transport her husband.  Stephanie
was told that patient could be alone on medication, but not drive. JoScott
RN.
Created By Jo                                      On Mon Jun 09 15:38 2003 ( 48)
Call from Mrs Jacks stating they had been gone most of the day to court,
getting insurance info, and running around.  She wanted to know if call had
been made to Stephanie as above.  Mrs Jacks was told the form was completed as
requested and it stands as written.  Mr Jacks can stay alone on meds
prescribed and she could transport him to appts since he should not drive. She
was encouraged to listed to message left on home machine by Stephanie and then
call her with any questions.  Mrs Jacks hung up.         JoScott RN

(W)indow View, (A)dd, (F)orward, (C)omplete, (O)ptions, or <Enter> to Work : .
```

**Exhibit 2**
**Affidavit of Martha Jo Scott, R.N.**

FaceTwin Screen Print for lynn, from "Medical Manager"  6/10/2003 10:02:39 AM

```
User # : 48                WORK CLINICAL TASKS                      [Jo]
Case # :
[WORK ISSUES]
Pri    Date      Patient    Name              Description           Rem Type
  2  06/10/03   27692.0   JACKS, KENNETH      WORK ISSUES            Y  WORK
0910:  Call from Sharon Jacks who again told this nurse that the FMLA forms
Rita filled out were not correct in that Karen Stoller had said she could be
off to take care of her husband.  Sharon was told that the off-work time was
for taking her husband to appts, but that other needs could be handled before
and after work. Sharon stated she lost her job because she did not go
yesterday(see 6/9 note) Sharon was told that the message would be give to KAK
staff upon their return this afternoon.
0930:  Call from Karen Stoller who stated Sharon called the CLinton clinic and
wanted clarification.  Returned call to Sharon but husband answered phone.  It
was explained that clinics are not to be called and  the FMLA form is correct
The time off from her job was to be for transportation to appts.  Mr Jacks
stated he was unhappy with the office and would seek care elsewhere.  Pt was
assured that only the best care was desired for him
Created By Jo                                  On Tue Jun 10 09:52 2003 ( 48)

  2  06/09/03   27692.0   JACKS, KENNETH      WORK ISSUES            Y  WORK

    (N)ext, (P)rev, (H)ardcopy, (R)emarks Off, (D)etail, or (O)ptions : .
```

**Exhibit 3**
**Affidavit of Martha Jo Scott, R.N.**

```
                 FacetWin Screen Print for lynn, from "Medical Manage    6/10/2003 2:46:00 PM

 User # : 48                    WORK CLINICAL TASKS                              [Jo]
 Case # :
 Doctor : 2                                                             [KEITH KATTNER  DO]
 [Misc.]
 Pri   Date      Patient    Name                 Description                    Type

  3  06/10/03   27692.0    JACKS, KENNETH        Misc.                          MISC
 [Remarks]
 KAK informed of all conversations and notes of 6/9 and 6/10.  Per KAK
 blacktape chart, no return visits, all inquiries to KarenRae or Mercedes.  All
 documentation to chart.                                     JoScott RN
 Created By Jo                                      On Tue Jun 10 14:52 2003 ( 48)
 .......................................................................................




    EDIT MODE              <Process> to Save, or <Exit>
```

**Exhibit 4**
**Affidavit of Martha Jo Scott, R.N.**

## PROGRESS NOTES

| Date | | Note |
|---|---|---|
| | | 12-53 |
| | | 27692 |
| 6-6-03 | | FMLA papers for Sharon Jacks ~~mailed~~ error RK 6-6-03 faxed to Conair 217-892-2479. R Karczewski RN |
| 6/9/03 | | See phone note ——— J Scott |
| 6/10/03 | | See phone notes ——— J Scott |
| 6/10/03 | | Per KAK - chart is to be flagstaged, to F/U visits. See all phone notes ——— J Scott |
| 6/11/03 | KDS | Per Dr KAK nurses & the phone nurse, Jo, Mrs. Jacks has threatened Dr KAK nurse, Rita K. I have reviewed with Jo Scott, Karen Staller, & Rita K. this issue & have called & talked w/ Mrs. Jacks. I did tell her that we would be glad to fax over an excuse for the one week but the FMLA form will stand as is as it is completed correctly. Kenneth's appt has been canceled & Dr. Kattner will not see him again & he is to return to Dr Thatcher. She understood. I told her that we take threats seriously & have to think of our employees well being. Karen Sager, OM |
| 6/17/03 | | ~~Release from Care letter sent.~~ M Morgan MM |