UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| SHARON JACKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04-2230 |
| | ) |
| CONAIR CORPORATION, | ) |
| | ) |
| Defendant. | ) |

PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

NOW COMES Plaintiff, SHARON JACKS, by and through her attorneys, KLECZEK LAW OFFICE, and for her Response to Defendant's Motion for Summary Judgment, states as follows:

INTRODUCTION

In May of 2002, Defendant, Con-Air Corporation, hired Sharon Jacks to work in the Rantoul facility. Sharon Jacks continued to work for Con-Air Corporation through May 2003. On May 29, 2003, Sharon Jacks' husband, Kenny Jacks, suffered a serious medical condition which required Mrs. Jacks to care for him.

Mrs. Jacks contacted the Human Resource Manager, Stephanie Burris, on June 2, 2003 and explained to her that she would have to take some off because her husband had suffered an injury. Ms. Burris requested that Sharon Jacks fill out and submit an FMLA Certification, which Mrs. Jacks did and Stephanie Burris received on June 9, 2003.

Ms. Burris determined that the FMLA Certification was approved, but only for intermittent leave. Ms. Burris unilaterally demanded that Sharon Jacks appear for work on June 9, 2003, and her failure to do so would result in her termination. Mrs. Jacks was

never afforded the opportunity to submit an updated Certification form prior to her termination. Mrs. Jacks was never consulted nor ever acquiesced to intermittent FMLA leave, as opposed to continuance leave.

On June 10, 2003, Mrs. Jacks was terminated from employment at Con-Air Corporation. Now Sharon Jacks brings this action to enforce her rights under the Family Medical Leave Act. There are no issues of material fact in dispute, and therefore, Sharon Jacks moves this Court for summary judgment in her favor as to liability with damages to be proven up at an evidentiary hearing.

### RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS

**A.    Undisputed Material Facts**

1.    Plaintiff does not dispute the following paragraphs of Defendants alleged Material Facts: 1, 3, 4, 13, 14, 16, 18, 20, 22, 24, 25, 26, 27, 28, 33, 35, 36,

**B.    Disputed Material Facts**

2.    Plaintiff disputes the allegation in Paragraph 2 that Mrs. Jacks' employment was terminated under Con-Air's attendance policy. Con-Air failed to grant Mrs. Jacks time off under the Family Medical Leave Act, and such failure was the direct and proximate cause of her termination. This is the thrust of the Motion for Summary Judgment and Plaintiff submits this Response Brief in opposition to this allegation.

12.    Plaintiff disputes Paragraph 12. Mrs. Jacks' absences, which qualified under FMLA, were marked as occurrences, and Mrs. Jacks was terminated for such time off.

15.    Paragraph 15 is disputed in that it alleges Mrs. Jacks called her employer regarding her anticipated absence because she knew she could be terminated. Mrs. Jacks

is a conscientious employee, and understands the demands of modern businesses and as a conscientious employee will call in to inform her employer of anticipated absences whether or not she knows she would be terminated.

19.     Paragraph 19 is disputed.  The form attached as Appendix 6 to Defendant's Motion for Summary Judgment has been altered from the original submission from Dr. Kattner's office.  On the second page of the Appendix, the word "transportation" in Paragraph 8(a) was not underlined by Dr. Kattner's office. Additionally, at the bottom of page 2, the circled term approved where it indicates "leave is hereby approved" was not filled in by Dr. Kattner's office, nor had there been a signature of Stephanie Burris or date.  Finally, the handwritten portion on the bottom was not on the form submitted by Dr. Kattner's office.  All this information was handwritten in by Stephanie Burris herself.  Attached hereto is Exhibit "2" as a true and correct copy of the actual form submitted by Dr. Kattner's office in its original state.  It was also entered as Exhibit 12 to Stephanie Burris' deposition and verified as the original. (Burris Dep. 63:1-23).

23.     Paragraph 23 is disputed.  Defendant misrepresents the facts.  As discussed above, the term transportation was underlined by Ms. Stephanie Burris and the emphasis misleads the court.  Therefore, it is important the Court refer to Plaintiff's Exhibit 2 when reviewing the Certification of Health Care Provider.  Upon such review, it is clear that the "yes" answer refers to the question "does the patient require assistance for basic medical or personal needs or safety?"  The answer "unable to drive due to pain level and medication" was an additional statement made for the second part of the

question. Again, Defendant attempts to mislead this Court both by submitting the altered Certification, and by changing which question was answered where.

34. Paragraph 34 is disputed, or in the alternative immaterial and inadmissible. Defendant misrepresents what Mary Jo Scott's Affidavit said. Nowhere in Paragraph 13 or Paragraph 19 did Mary Jo Scott state that the information contained in said paragraphs was based on confirmation with Dr. Kattner. Additionally, said alleged confirmation, which Mary Jo Scott did not even say occurred, is inadmissible hearsay. Finally, as discussed in Paragraph 29 and in the body of Mrs. Jacks' Brief, Mary Jo Scott is not competent to testify as to Kenny Jacks' medical condition.

37. Paragraph 37 is disputed. Paragraph 37 goes to the heart of the legal issue at hand. Mrs. Jacks was entitled to a reasonable period to cure any deficiencies in her Certification. Therefore, by terminating her on either June 9, 2003 or June 10, 2003 was not reasonable time as a matter of law and therefore should not have been labeled an "occurrence".

38. Paragraph 38 is disputed. Paragraph 38 goes to the heart of the legal issue at hand. Mrs. Jacks was entitled to a reasonable period to cure any deficiencies in her Certification. Therefore, by terminating her on either June 9, 2003 or June 10, 2003 was not reasonable time as a matter of law and therefore should not have been labeled an "occurrence".

39. Paragraph 39 is disputed and inadmissible. First, no where in Ms. Burris' deposition, and even more specifically, no where in the portion cited by the Defendant did Ms. Burris state that Sharon would not have been terminated if she had shown up for

4

part of her shift on June 9, 2003. Additionally, such testimony is inadmissible speculation.

    **C.**    **Immaterial Facts**

    5.    Paragraph 5 is immaterial because Mrs. Jacks does not dispute that she was an at will employee, and therefore Defendant could terminate her employment for any legal purposes. What is in dispute is that Con-Air terminated Mrs. Jacks' employment for taking time off pursuant to the Family Medical Leave Act.

    6.    Paragraph 6 is immaterial because Mrs. Jacks does not dispute that she was an at will employee, and therefore Defendant could terminate her employment for any legal purposes. What is in dispute is that Con-Air terminated Sharon Jacks' employment for taking time off pursuant to the Family Medical Leave Act.

    7.    Paragraph 7 is immaterial because Sharon Jacks does not dispute that she was an at will employee, and therefore Defendant could terminate her employment for any legal purposes. What is in dispute is that Con-Air terminated Mrs. Jacks' employment for taking time off pursuant to the Family Medical Leave Act.

    8.    Paragraph 8 is immaterial because Sharon Jacks does not dispute that she was an at will employee, and therefore Defendant could terminate her employment for any legal purposes. What is in dispute is that Con-Air terminated Mrs. Jacks' employment or taking time off pursuant to the Family Medical Leave Act.

    9.    Paragraph 9 is immaterial because Sharon Jacks does not dispute that she was an at will employee, and therefore Defendant could terminate her employment for any legal purposes. What is in dispute is that Con-Air terminated Mrs. Jacks' employment or taking time off pursuant to the Family Medical Leave Act.

10.     Paragraph 10 is immaterial because Sharon Jacks does not dispute that she was an at will employee, and therefore Defendant could terminate her employment for any legal purposes.  What is in dispute is that Con-Air terminated Mrs. Jacks' employment or taking time off pursuant to the Family Medical Leave Act.

11.     Paragraph 11 is immaterial because Sharon Jacks does not dispute that she was an at will employee, and therefore Defendant could terminate her employment for any legal purposes.  What is in dispute is that Con-Air terminated Mrs. Jacks' employment or taking time off pursuant to the Family Medical Leave Act.

17.     Paragraph 17 is immaterial because Mrs. Jacks had fifteen (15) days from June 2, 2003 to provide Certification.  Therefore, it is immaterial that there was no contact between Mrs. Jacks and Ms. Burris after June 2, 2003 until June 9, 2003.

21.     Paragraph 21 is immaterial and inadmissible.  It has no bearing on the case what Dr. Kattner allegedly said to his Mary Jo about the paperwork, such a statement is inadmissible hearsay.  Mrs. Jacks was not in a position to know what Dr. Kattner meant for that statement.  Additionally, Defendant is attempting to introduce the statement for the truth of the matter asserted.  For these reasons Paragraph 21 is immaterial and inadmissible.

29.     Paragraph 29 is immaterial and inadmissible.  It is irrelevant what "Mary Jo Scott" says, and is not competent to testify pursuant to *Daubert* regarding Kenny Jacks' medical condition.  This issue is addressed further within the body of Mrs. Jacks' Brief.

30.     Paragraph 30 is immaterial and inadmissible.  It is irrelevant what "Mary Jo Scott" says, and is not competent to testify pursuant to *Daubert* regarding Kenny

6

Jacks' medical condition. This issue is addressed further within the body of Mrs. Jacks' Brief.

31.     Paragraph 31 is immaterial and inadmissible. It is irrelevant what "Mary Jo Scott" says, and is not competent to testify pursuant to *Daubert* regarding Kenny Jacks' medical condition. This issue is addressed further within the body of Mrs. Jacks' Brief.

32      Paragraph 32 is immaterial and inadmissible. It is irrelevant what "Mary Jo Scott" says, and is not competent to testify pursuant to *Daubert* regarding Kenny Jacks' medical condition. This issue is addressed further within the body of Mrs. Jacks' Brief.

40.     Paragraph is immaterial and inadmissible. See allegation from Paragraph 29. Additionally, none of the paragraphs listed where allegations by Mary Jo Scott were based on conversations with Dr. Kattner. In the event that they were, they are inadmissible hearsay, and Mary Jo Scott is not competent to neither testify as to Kenny Jacks' medical condition nor create a Certification.

41.     Paragraph 41 is immaterial. The law requires that Defendant give Mrs. Jacks a reasonable opportunity to cure defects. It does require that Mrs. Jacks notified Defendant that she is requesting a reasonable period to cure any defects. Additionally, it is immaterial as to who Mrs. Jacks blamed for losing her job. By virtue of this lawsuit, it is clear that Mrs. Jacks blames Con-Air Corporation for losing her job.

D.  **Additional Material Facts**

1.  Con-Air Corporation received a faxed document from Dr. Kattner on June 6, 2003. (Burris Dep. 60:18-22). From June 2, 2003 through June 6, 2003 was preliminary approved for FMLA. (Burris Dep. 42:15-21).

2.  The form submitted from Dr. Kattner's office indicated that the medical condition began on May 29, 2003, that the duration of the condition was undetermined and that the next office was June 23, 2003. (Burris Dep. 65:11-15).

3.  Ms. Burris confirmed the verification of health care provider as attached as Exhibit 12 of the Burris deposition was received by her on June 9, 2003. (Exhibit 2, Burris Dep. 63:15-16). The Certification states "patient will be seeing pain management for injections and then to physical therapy. (Exhibit 2). The Certification also states that the condition "began 5/29/03" and the "duration was undetermined" but that the "next office visit [was] 6/23/03" (Exhibit 2).

4.  In response to the question "leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety or for transportation?" (Burris Dep. Exhibit 12). Dr. Kattner's response was "yes". *Id*. Additionally, Dr. Kattner stated "unable to drive due to pain level and medications." (Burris Dep. Exhibit 12).

5.  The form was signed by Dr. Kattner. (Burris Dep. 67:9-11).

6.  Kenny Jacks had a serious medical condition as defined by the Family Medical Leave Act. (Burris Dep. 66:7-67:2). Con-Air Corporation is not disputing the serious medical condition suffered by Mrs. Jacks. *Id.*

7. Ms. Burris had approved Mrs. Jacks' FMLA leave. (Burris Dep. 69:18-20).

8. Mrs. Jacks was not required to call in sick on Monday, June 9, 2003. (Burris Dep. 70:14-19).

9. Sharon Jacks told Stephanie Burris that she needed to be off to take care of Kenny Jacks, her husband. (Burris Dep. 73:9-15).

10. On Tuesday, June 10, 2003, Stephanie Burris terminated Sharon Jacks for "job abandonment". (Burris Dep. 76:20-21; 78:9-13, Exhibit 2); (Jacks Dep. 29:1-4; 77:7-11).

11. On June 9, 2003, in a telephone conversation with Stephanie Burris, Ms. Burris told Mrs. Jacks that the Certification form authorized Mrs. Jacks to be off to transport Kenny Jacks. (Jacks Dep. 67:22-68:7).

12. Mrs. Jacks was never notified by Ms. Burris that if she had brought updated forms into her office or got a changed FMLA form, she could have gotten her job back. (Burris Dep. 80:20-81:23).

13. Ms. Burris never gave Mrs. Jacks the opportunity to provide a corrected FMLA form. (Burris Dep. 80:20-81:23).

14. Reinstatement was never a topic and it was reasonable for Mrs. Jacks to have understood that she was fired. (Burris Dep. 82:9-16).

15. Stephanie Burris contacted Dr. Kattner's office prior to speaking with Mrs. Jacks. She did not have Mrs. Jacks' permission to do so. (Burris Dep. 71:5-23; 72:1-73:18).

16.    There is not dispute the Certification was complete and signed by Dr. Kattner. (Burris Dep. 67:9-16).

17.    Dr. Fletcher was Kenny Jacks' treating physician beginning June 24, 2003 relating to his May 29, 2003 injury. (Affidavit of Dr. Fletcher ¶¶ 1, 2).

18.    Dr. Fletcher regularly certifies patients, employees and spouses of patients for employers under the Family Medical Leave Act.

19.    Dr. Fletcher states that based on the condition of Kenny Jacks' work injury, the care and treatment that he provided and a June 6, 2003 MRI, Dr. Fletcher would have provided Certification for Mrs. Jacks to care for her husband on a full-time basis. (Affidavit of Dr. Fletcher ¶¶ 5, 6).

I.    **The Affidavit of Mary Jo Scott Must Be Stricken Because She Is Not Competent To Testify As To Kenny Jack's Medical Condition, It Is Inadmissible Hearsay, And It Is Not Relevant**

Rule 702 of the Federal Rules of Evidence requires a determination as to the reliability and relevance of a proposed expert, often referred to as a "gatekeeping function". *Daubert v. Merrel Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 596-597 (1993). When presenting expert testimony, the proponent of the expert has the burden of proving to the judge that the testimony is admissible. F.R.E. 104(a). In order to prove reliability of an expert's proposed opinions, a number of factors must be taken into account, including: the pertinent data that the expert based his or her opinion on, the articles or materials or other educational materials that have been read and used by the expert, the technique relied on by the expert, whether the techniques have been peer reviewed and tested, whether the techniques has ever been accepted, the methodology used by the expert in forming his or her opinion, the existence and maintenance of standards and

controls, and the known or potential rate of error with respect to the theory or technique. *Id.,* see also *Kumho Tire Co., Ltd., et. al. v. Carmichael, et. al.,* 119 S.Ct. 1167 (1999).

"An expert who supplies nothing more than a bottom line supplies nothing of value to the judicial process." *Mid-State Fertilizer Co. v. Exchange National Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989). "[A]n expert's declaration, full of assertion but empty on facts and reasons, won't get a case past a motion for summary judgment, for the judge must 'look behind [the expert's] ultimate conclusion . . . and analyze the adequacy of its foundation." *Richardson v. Richardson-Merrell, Inc.*, 857 F.2d 823 (D.C. Cir. 1988).

Defendant asserts "Consulting both Dr. Kattner and Kenny's medical records, Mary Jo Scott *determined* that Kenny did not need constant care." (Defendant's Motion, ¶31, emphasis added). In Ms. Scott's affidavit, she states "[u]pon independent review of the status of Mr. Jack's surgery and medical condition as stated in his medical chart, and in consultation with Dr. Kattner, *I confirmed that Mr. Jacks did not require constant care."* (Ms. Scott's Affidavit, ¶12, emphasis added). Ms. Scott's affidavit does not indicate the techniques she used, the information she relied upon, nor any of her qualifications.

In fact, Ms. Scott indicated that her duties were to assist Dr. Kattner and answer the phone. (Ms. Scott's Affidavit, ¶¶5, 6). Her duties were not to diagnose and treat patients. Significantly, Defendant's do not produce an affidavit from a doctor, but a Mary Jo. No proper foundation was given. Lastly, she relied on hearsay testimony.

Her testimony is in admissible as not competent and as hearsay.

11

## II.     Summary Judgment Standards

Summary Judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed 265 (1986). However, the mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *Liu v. T&H Mach., Inc.,* 191 F.3d 790, 796 (7th Cir. 1999); instead, only a "genuine" issue of "material" fact precludes summary judgment. Fed. R. Civ. P. 56(c). Factual disputes are "material" only when they "might affect the outcome of the suit under the governing law." *Oest v. Illinois Dep't of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001). Further, factual disputes are "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the [nonmovant]." *Id*. In other words, mere speculation or conjecture will not suffice. *Liu*, 191 F.3d at 796.

## III.    Argument

### A.    The Certification Submitted By Dr. Kattner On June 6, 2003 Was A Positive Certification, And An Oral Telephone Conversation With A Registered Mary Jo Does Not Change the Positive Certification To A Negative Certification.

"If an employee submits a complete Certification signed by the healthcare provider, the employer may not request additional information from the healthcare provide." 29 C.F.R.825.307(a). Defendant admits "Dr. Kattner's medical certification was not incomplete or ambiguous." (Defendant's Brief, pg. 20, heading D). By Defendant's own admission, it violated FMLA.

Defendant required a certification in writing from Mr. Jacks' health care provider. Sharon Jacks complied, and provided a signed certification four days after her employer

requested it. Defendant admits that Mr. Jacks had a "serious medical condition" during the time in question. After receiving the form, Defendant attempted to "de-certify" Mrs. Jacks by calling the phone nurse, Mary Jo Scott, at Mr. Jacks' physician's office. She received oral instructions from a person not qualified either under FMLA nor *Daubert* in Defendant's attempt to "de-certify" Mrs. Jacks.

Defendant's actions were improper. Defendant had three options once it obtained the signed Certification:

1) tell Mrs. Jacks the Certification was incomplete or inadequate, and provide her a "reasonable opportunity" to cure the problem, 29 C.F.R. 825.305(d);
2) require Mrs. Jacks to obtain a second opinion, 29 C.F.R. 825.307 (a)(1); or
3) have "a health care provider representing the employer… contact the employee's health care provider, *with the employee's permission*, for purposes of clarification and authenticity of the medical certification." 29 C.F.R. 825.307(a). (emphasis added).

See also *Sorrell v. Rinker Material Corp.*, 395 F.3d. 332, 337 (6th Cir. 2005).

Defendant pursued none of these options. Defendant may claim it chose option three, but it did not. First, it was Stephanie Burris, an HR manager, who contacted Mr. Jacks' health care provider. Defendant did not have a "health care provider" contact Mr. Jacks' "health care provider." Second, Defendant never requested nor obtained permission of Sharon nor Kenny Jacks to make such a contact.

Mary Jo Scott is not qualified under FMLA as a "health care provider" to provide certification, negative certification, or the employer's second opinion. A "health care provider" is:

13

> "(1) A doctor of medicine or osteopathy who is authorized to practice medicine or surgery (as appropriate by the State in which the doctor practices; or
> (2) Any other person determined by the Secretary to be capable of providing health care services."

29 C.F.R. 825.118(a). In §825.118(b), "capable of providing health care services" is defined. Nowhere in the section is a registered nurse listed as one who is "capable of providing health care services. A nurse practitioner is, but that is a more highly trained and qualified designation.

The case of *Kauffman v. Federal Express Corp.* is instructive. 426 F.3d.880 (7th Cir. 2005). *Kauffman* came down with Bronchitis, and his employer requested he submit FMLA Certification. *Id.* at 882. The employer claimed Kauffman's doctor provided a "negative certification" because the form was incomplete. *Id.* at 886. Federal Express claimed that the certification did not give a duration for the incapacity, and thus was a negative certification. *Id.* at 887. Rejecting this argument, the Court held that the failure to include the duration of incapacity did not make the certification a "negative certification."

Likewise, Con-Air's argument that Dr. Kattner's Certification was a "negative certification" is without merit. Even Ms. Burris marked "approved" on the Certification. The Certification was a positive one, and like in *Kauffman*, put Con-Air on notice of Mr. Jacks' medical condition and the duration of the leave.

It is not undisputed that Kenny Jacks <u>only</u> needed "transportation". Defendant wrote that into the medical certification. The signed certification never said only for transportation. The testimony of Mary Jo Scott is not admissible, she is not an expert.

14

Defendant's Motion for Summary Judgment relies on *Stoops v. One Call Communications*, 141 F.3d 309 (7th Cir. 1997). Stoops was missing much work because of a medical condition he had. *Id.* at 310. His employer suggested he seek FMLA. *Id.* at 310. Stoops doctor refused to approve Stoops for FMLA, and so informed his employer. *Id.* at 311. His employer would not approve FMLA. *Id.* at 311. Stoops subsequently missed 12 days in a four week work period. *Id.* at 311. Thereafter, Stoops was fired. *Id.* at 311. The Court granted summary judgment to the employer because Stoops doctor had already provided a "negative" certification, or one that said Stoops did not qualify for certification. Stoops employer was entitled to rely on this lack of certification in firing him. This is not the case in our situation. Sharon Jacks had never received a negative certification. In fact, she had received a "positive" certification. The defendant was on notice that the doctor had said Sharon Jacks qualifies for FMLA to care for her husband.

Mrs. Jacks submitted a Certification from her husband's doctor stating she qualified for FMLA leave. The Defendant called the doctor's office to try to de-certify Mrs. Jacks. At best, this was Defendant's attempt to obtain a second opinion, pursuant to the Act. As Ms. Scott is not a health care provider as defined by the Act, the second opinion is invalid and inadmissible.

### B.    Defendant Failed To Provide Any Reasonable Opportunity To Cure The Alleged Defect In The Certification.

Defendant also claims that it "provided [Sharon Jacks] with an opportunity to cure the certification form, but she was unable to do so." (Defendant's Brief, p. 15). When? It never gave Mrs. Jacks the "reasonable" amount of time required under the law to cure the certification.

15

FMLA "imposes an affirmative duty on an employer that finds a medical certification incomplete . . ." *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 337 (6th Cir. 2005). It requires an employer to provide a "reasonable opportunity to cure any such deficiency." *Id.*, citing to 29 C.F.R. 825.305(d). Incomplete has been equated to the term "inadequate." *Id.*, see also *Strickland v. Water Works & Sewer Bd.* 239 F.3d 1199, 1209 (11th Cir. 2001).

Defendant told Mrs. Jacks on June 9, 2003 that she had to work that evening. It told Mrs. Jacks that if she did not come in on the evening of June 9, 2003, she would be terminated. It did not give Mrs. Jacks any opportunity, not to mention a 'reasonable opportunity', to cure any alleged incompleteness or inadequateness. Whether a reasonable opportunity to cure was provided should be a question of fact for the jury to decide. For this reason, summary judgment should be denied.

### C. Under This Set Of Facts, Mrs. Jacks Was Entitled To FMLA Protection.

Defendant argues "Plaintiff cannot establish that her entire absence was medically necessary on June 9, 2003 due to a qualifying reason under the FMLA . . ." Defendant's Brief, p. 15. Plaintiff can establish her entire absence was medically necessary, and did establish that her entire absence was medically necessary. Assuming, *aruendo*, that Dr. Kattner did not provide adequate Certification, Mrs. Jacks would have been able to provide adequate Certification from Dr. Fletcher. See Affidavit of Dr. Fletcher. Additionally, in the event that Con-Air Corporation had provided a second opinion who denied Certification, Dr. Fletcher would have been available to provide a third Certification.

Additionally, Defendant seems to suggest that FMLA requires an employee to be at work at the employer's behest for the period under which the serious medical condition does not apply. Such a suggestion is not a workable solution. Where does one draw the line? How do you have a workable solution? Can an employer require an employee to come in for five minutes during the period when an injured spouse is taking a nap? Can the employer require an injured employee to come in for the short period when he may not have pain or require treatment? A bright line rule is more manageable, and what Congress envisioned when it enacted FMLA.

Finally, the signed Certification from Dr. Kattner never said the Certification was "only for transportation." It was a general Certification stating that Kenny Jacks had a serious medical condition and required the care of Mrs. Jacks. As indicated above, Stephanie Burris went outside the bounds of the law and personally contacted Dr. Kattner's office. As indicated earlier, Defendant's own Brief on page 20, heading D, states Dr. Kattner's medical certification was not incomplete or ambiguous…" Therefore, pursuant to 29 C.F.R. 825.307(a), "the employer may not request additional information from the employee's health care provider."

**CONCLUSION**

For these reasons, summary judgment in favor of the Defendant is inappropriate, and Sharon Jacks requests this Court deny Defendant's Motion for Summary Judgment and any other relief this Court deems just and fair.

**RESPECTFULLY SUBMITTED,**
**DAVID A. KLECZEK**
**Attorney for Plaintiff**
**KLECZEK LAW OFFICE**
**321 N.E. Madison Ave.**
**Peoria, Illinois 61603**
**Telephone: (309) 674-4141**
**Facsimile: (309) 674-4144**
**E-mail: dkleczek@netzero.com**

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**Urbana Division**

| | |
|---|---|
| **SHARON JACKS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 04-2230 |
| | ) |
| **CONAIR CORPORATION,** | ) |
| | ) |
| Defendant. | ) |

### CERTIFICATE OF SERVICE

I hereby certify that on May 22, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: J. Stuart Garbutt of Meckler, Bulger & Tilson and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants: N/A

**RESPECTFULLY SUBMITTED,**
**s/ DAVID A. KLECZEK**
**David Kleczek Bar Number:  6276591**
**Attorney for Plaintiff**
**KLECZEK LAW OFFICE**
**321 N.E. Madison Ave.**
**Peoria, Illinois 61603**
**Telephone: (309) 674-4141**
**Facsimile: (309) 674-4144**
**E-mail: dkleczek@netzero.com**

19