STEPHANIE D. BURRIS, JANUARY 17, 2006

ORIGINAL

```
 1              UNITED STATES DISTRICT COURT
                CENTRAL DISTRICT OF ILLINOIS
 2                    URBANA DIVISION

 3

 4   SHARON JACKS,                )
                                  )
 5        Plaintiff,              )
                                  )
 6        -vs-                    )    No. 04-2230
                                  )
 7   CONAIR CORPORATION,          )
                                  )
 8        Defendant.              )

 9

10

11

12            THE DISCOVERY DEPOSITION of STEPHANIE
     D. BURRIS, the deponent herein, called by the
13   Plaintiff for examination pursuant to notice and
     agreement and pursuant to the provisions of the
14   Code of Civil Procedure and the Rules of the
     Supreme Court thereof pertaining to the taking of
15   depositions, taken before me, Jill A. Bleskey,
     CSR-RPR, License No. 084-004430, a Notary Public in
16   and for the State of Illinois, at Brookens
     Administration Building, Meeting Room 2, 1776 East
17   Washington Street, in the City of Urbana, County of
     Champaign, and State of Illinois on the 17th day of
18   January, A.D., 2006, commencing at 11:00 a.m.

19
     ------------------------------------------------
20
21              Jill A. Bleskey, RPR
                  CSR #084-004430
22
23
```

RECEIVED JAN 2 7 2006

ESQUIRE DEPOSITION SERVICES - CHICAGO
312.782.8087   800.708.8087   FAX: 312.704.4950

1  receive.  So if it didn't have it on there her
2  history has been that she's used 20, I guess, as to
3  demark that.
4       Q.     Your understanding is 20 means FMLA?
5       A.     Yes.
6       Q.     Approved FMLA?
7       A.     In this case -- that's a tricky
8  question to answer.  Because an employee has 15
9  days to get me that paper.  So I'm assuming, yes,
10 it's going to be approved based on what paperwork
11 they're going to provide me.  So yes, until I get
12 the paperwork I've preliminary approved it, yes.
13      Q.     Okay.  So where the 20's are --
14      A.     Yes.
15      Q.     -- there's a 20 for each day between
16 and including June 2nd through June 6th, correct?
17      A.     Yes.
18      Q.     And that's a -- as you described it,
19 a preliminary approved FMLA?
20      A.     Yes.  She did not receive any
21 occurrences for any of that whole week off.
22      Q.     Okay.  Then on the 9th, there's a
23 notation.  What does that mean?

1   Kenny had hurt his back and she needed to take care
2   of him. And I asked her if she was looking for
3   family leave and she said yes. I said I would get
4   the paperwork ready for her.
5           I did not speak with her when she
6   picked them up on Monday but I pulled out the
7   paperwork, had it in front of me, and said you're
8   going to need to fill in your name, Kenny's name,
9   make sure you sign it, and then have the doctor
10  fill it out. And then I gave her our fax number so
11  she could fax it to me.
12      Q.      So faxing it to you was an
13  appropriate --
14      A.      Yes.
15      Q.      -- method of communicating it to you,
16  right?
17      A.      Yes.
18      Q.      Okay. And you would agree that you
19  received a faxed document from Dr. Katner on June
20  6th, 2003?
21      A.      Yes. He sent it after hours so I did
22  not receive them until Monday morning.
23              MR. KLECZEK:  Do you have a stapler?

1  Q. I'm handing you what's been marked as
2  Deposition Exhibit 12.
3  A. Uh-huh.
4  Q. Is this the document that was faxed
5  to your office on June 6h, 2003?
6  A. Yes.
7  Q. Okay. Because there are differences
8  between Burris Deposition Exhibit Number 12 and
9  Jacks' Deposition Exhibit Number 6, and they're on
10 the second page.
11 A. Okay. Yes, I signed it, I made
12 notes, and I underlined transportation.
13 Q. Okay. But the document in Burris
14 Deposition Exhibit Number 12 is the one that was
15 actually faxed to your office?
16 A. Yes.
17 Q. And this was the state it was in when
18 you received it on Monday, --
19 A. Yes.
20 Q. -- June 9th, --
21 A. Yes.
22 Q. -- 2003?
23 A. Yes.

```
 1      Q.      Okay.  And Number 4 it was written,
 2 the patient will be seeing pain management for
 3 injections and then to physical therapy, --
 4      A.      Yes.
 5      Q.      -- right?
 6      A.      Yes.
 7      Q.      Okay.  Number 5 asks for the date the
 8 condition began and the duration of the condition,
 9 right?
10      A.      Yes.
11      Q.      And they indicated it began on May
12 29th, 2003, right?
13      A.      Yes.
14      Q.      The duration was undetermined but the
15 next office visit was June 23rd, 2003?
16      A.      Yes.
17      Q.      You would agree that this infers the
18 condition will last through June 23rd, 2003?
19      A.      Yes.
20      Q.      Okay.  Under 5B it's asked whether
21 the employee will only work intermittently or less
22 than a full-time schedule.  There's no answer
23 there, right?
```

1    A.    No.

2    Q.    A chronic condition under C. If the chronic condition caused the patient's being incapacitated. There's no answer there either, right?

6    A.    No. I'm sorry.

7    Q.    There's no answer under 6A asking for the number of treatments, right?

9    A.    Correct.

10    Q.    Okay. And there's no answer under 6B for the nature of the treatments, right?

12    A.    Correct.

13    Q.    Okay. 6C, no answer?

14    A.    Correct.

15    Q.    And 7A, B, and C, no answer?

16    A.    Correct.

17    Q.    Okay. Under 8 it's asked if leave is required to care for a family member of an employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety or for transportation, that's the question, right?

23    A.    Yes.

1    Q.    And the answer is yes?
2    A.    Yes.
3    Q.    And then it says also unable to drive
4 due to pain level and medications, right?
5    A.    Yes.
6    Q.    Okay. Doesn't say anything about
7 driving to and from medical appointments, right?
8    A.    No.
9    Q.    Okay. And then it's signed by Dr.
10 Katner?
11    A.    Yes.
12    Q.    Okay. You don't dispute that he
13 approved this, right?
14    A.    I have no basis to dispute that, no.
15    Q.    Okay. Dated June 6, 2003?
16    A.    Yes.
17    Q.    All right. This is a form that
18 Conair has drafted, correct?
19    A.    No. I believe that they -- it's not
20 something they've drafted. I believe that they've
21 gotten that from some family leave site, I'm not
22 sure.
23    Q.    Okay. All right. Under 5A --

1    A.    No.

2    Q.    Okay. Who underlined that?

3    A.    I did it but not when I received it.

4    Q.    Okay. When was it underlined?

5    A.    After I spoke with Dr. Katner's
6 office.

7    Q.    Did you ever speak with Dr. Katner?

8    A.    No. I didn't need to speak with him
9 because his medical condition was not what was in
10 dispute.

11   Q.    You're not disputing that Mr. Jacks
12 had a serious medical condition?

13   A.    No. Not, not at all.

14   Q.    Are you disputing that Mr. Jacks was
15 incapacitated pursuant to the definition that we
16 just talked about?

17   A.    No.

18   Q.    At the bottom you marked that the
19 FMLA leave is approved?

20   A.    Yes.

21   Q.    And then did you simultaneously --

22   A.    Yo.

23   Q.    -- write this additional language?

STEPHANIE D. BURRIS, JANUARY 17, 2006

```
 1      A.      Yes.
 2      Q.      And what does that say?
 3      A.      "For doctor appointments, therapy, et
 4  cetera, per nurse.  Patient does not require 24/7
 5  care."
 6      Q.      And that's from the nurse, --
 7      A.      Yes.
 8      Q.      -- from you talking with the nurse?
 9      A.      Yes.  Talking -- yes.
10      Q.      Okay.  Now, approximately what time
11  did you receive this?
12      A.      When I got to work at six o'clock on
13  that Monday.
14      Q.      Okay.  And what this is telling you
15  is that -- well, strike that question.  Based on
16  you receiving this Monday morning, was Sharon
17  Jacks, in your opinion, required to call in sick on
18  Monday?
19      A.      No.  What I needed to do -- no, she
20  wasn't.  She needed to be notified that her request
21  for family leave to be off 24/7, which is what she
22  felt she needed, did not correspond to what the
23  physician's documentation provided.
```