STEPHANIE D. BURRIS, JANUARY 17, 2006

```
 1        Q.     Okay.  Did you talk to Ms. Jacks that
 2   day?
 3        A.     Yes.
 4        Q.     Who called who first?
 5        A.     I believe I called her first.
 6        Q.     Okay.
 7        A.     I did not reach her.
 8        Q.     Did you leave a message?
 9        A.     And she called me back after lunch to
10   ask me if I'd gotten the paperwork.
11        Q.     Did she tell you if she was at the
12   courthouse?
13        A.     No, not at that -- that was right
14   after lunch.  We did have one more conversation
15   that day and that's when she told me she was at
16   court.
17        Q.     So in terms of -- you heard Ms. Jacks
18   testify about the conversations that day?
19        A.     Yes.
20        Q.     Do you recall anything that you
21   dispute remembering listening to Ms. Jacks'
22   testimony?
23        A.     She made it sound like we only had
```

1  one conversation that day, we did have two, one was
2  right after lunch when she contacted me to make
3  sure I got the paperwork.
4      Q.    Okay.
5      A.    I told her I had.
6      Q.    That was right after lunch?
7      A.    Yes.
8      Q.    So she called you?
9      A.    She called me right after lunch, yes.
10     Q.    And approximately what time was that?
11     A.    It had to have been after -- let's
12  say between 12 and 12:30. I don't want to be
13  specific to that but it was right after lunch, yes.
14     Q.    It wasn't any later that one o'clock?
15     A.    No.
16     Q.    Okay. And at that time did she say
17  that she wasn't going to be in that day?
18     A.    No. What she -- no.
19     Q.    Okay. What did she say to you?
20     A.    She called to ask me if I'd received
21  the paperwork.
22     Q.    And what did you say?
23     A.    I said I had but the paperwork did

1  not corroborate that she needed to be off 24/7 with
2  Kenny, that she just needed to provide him
3  transportation. I told her that I had contacted
4  the doctor's office to see if -- you know, there
5  was a dispute in the paperwork, to clar -- I needed
6  to clarify. Because what she was telling me and
7  what the paperwork said weren't the same. She said
8  she would call the doctor's office herself too.
9       Q.      Okay. What was she telling you?
10      A.      That she wanted to be off with Kenny.
11      Q.      Okay. That Kenny required her care?
12      A.      She said that she felt she needed to
13 be off with Kenny. And what I said to her was
14 that's not what the doctor's paperwork said. And I
15 did encourage her to call the doctor's office too.
16      Q.      Did she say that Kenny requires my
17 care, I need to be with him?
18      A.      No. She said she felt she needed to
19 be off with Kenny.
20      Q.      Okay. Was it understood that she was
21 not going to come in to work --
22      A.      No.
23      Q.      -- Monday?

1  court, she didn't think she'd make it in time.
2      Q.    So it was understood, at least you
3  understood that she wasn't coming in to work that
4  day, at this point?
5      A.    I'm not -- no, I'm going to say no to
6  that. Because she was out and providing him
7  transportation, she could have arrived anytime that
8  night and that part would have been covered under
9  FMLA.
10     Q.    Okay. Did you talk to her anymore
11 that day?
12     A.    No.
13     Q.    When was the next time you talked to
14 Sharon?
15     A.    I don't believe I talked to Sharon
16 again.
17     Q.    Okay. Did you ever inform her that
18 she was terminated?
19     A.    I don't believe so.
20     Q.    Did you terminate her the next day?
21     A.    Yes.
22     Q.    And what's the process of terminating
23 somebody?

1  Q.     And what's -- I mean, what's the
2  process for that, filling out forms?
3  A.     Yes.  Just as we went through the
4  checklist.
5  Q.     Okay.  So at this point Sharon Jacks
6  had been terminated from employment --
7  A.     Yes.
8  Q.     -- as of June 10th, 2003, right?
9  A.     Yes.
10 Q.     Effective June 9th, 2003?
11 A.     Yes.  Because that would have been
12 her last -- that would have been the date she was
13 expected at work.
14 Q.     And was she eligible for rehire or
15 not eligible for rehire?
16 A.     She would have been eligible for
17 rehire had she notified us.  Usually when we --
18 once we get to this, because of attendance at three
19 final warnings, --
20 Q.     Had she notified you of what?
21 A.     You know, she would have said, yes,
22 I'm coming in.  We don't have a strict policy on
23 rehire.

```
 1      Q.      Okay.  You -- did she say that Kenny
 2 was hitting her?
 3      A.      No.
 4      Q.      Or threatening her?
 5      A.      No.
 6      Q.      Or abusing her?
 7      A.      No.
 8      Q.      Just wanted to be sure.
 9      A.      Sure.
10      Q.      Because you mentioned the women's
11 center.
12      A.      Yeah.
13      Q.      Did she infer that in any way?
14      A.      No.  She didn't -- she inferred it,
15 she didn't -- she implied it, I should say.
16      Q.      How did she imply it?
17      A.      She was just crying.  And I walked
18 outside with her and I said, are you okay, and she
19 said she blamed Kenny for making her lose her job.
20      Q.      Okay.  At anytime, did you tell her
21 that if she got the FMLA form changed that she
22 could get her job back?
23      A.      When we talked on that day, on the
```

1   9th.
2        Q.    Okay.
3        A.    The ball was in her court at that
4   point to get them changed. And had I received
5   updated forms that day to have her off she'd have
6   been off, she'd have been approved.
7        Q.    What if she brought in updated forms —
8   say on June 11th?
9        A.    That would -- we would have had to
10  have considered it.
11       Q.    You would have had to have considered
12  it?
13       A.    Yeah.
14       Q.    Okay. But you never told her after
15  she picked up her check Friday that she could still
16  bring in the forms?
17       A.    No. She didn't even bring it up.
18       Q.    Okay. She was never -- did you ever
19  send her any letters?
20       A.    No.
21       Q.    And you never sent her any additional
22  forms?
23       A.    No.

1  Q. Okay. And I want to understand, your
2 words to her on Monday were that if you don't get
3 us an updated form or you don't show up tonight you
4 will be terminated?
5  A. No. What I said to her was, based on
6 these forms she had to report for her shift and if
7 she didn't she would terminate because that would
8 take her to three final warnings.
9  Q. Okay. So it's reasonable for her to
10 have understood that she would be fired if she
11 didn't come in that day?
12  A. I believe so, yes.
13  Q. Okay. And did you at all ever
14 discuss reinstatement?
15  A. It was never -- no, it was never a
16 topic.
17  Q. Okay. All right. On June 9th you
18 had made various phone calls to Dr. Katner's
19 office?
20  A. Yes.
21  Q. And you first called Dr. Katner at
22 8:05 in the morning?
23  A. After I -- right after they opened up

# TERMINATION CHECKLIST

| NAME OF EMPLOYEE: | Sharon Jacks | LAST DAY WORKED: | 5/30/2003 |
|---|---|---|---|
| | | EFFECTIVE DATE: | 6/10/2003 |

**REASON:**

| JOB ABANDONMENT | ✓ | | |
|---|---|---|---|
| VOLUNTARY QUIT | | VACATION DAYS: | 1 |
| JOB PERFORMANCE | | | |
| DISCHARGED | | | |

EXPLAIN: Job Abandonment – No call no show

**FORMS TO PULL:**
- CALENDAR – VACATION/SICK ✓
- PERSONAL HISTORY SHEET ✓
- I-9 FORM TO BACK OF BOOK ✓

**DELETE FROM:**
- EVACUATION LIST ✓
- LOCKER ASSIGNMENT ✓
- E-TIME PROGRAM ✓

**COBRA FORM:**
QUALIFYING EVENT FORM
(Faxed to Cathy – E.W. Benefits) ✓
Faxed on: 6/10/03

401K, if applicable ✓
Profit Sharing, If applicable ✓

**ITEMS RETURNED:**
- CONAIR WHITE BINDER
- KEYS (if applicable) ---
- ACCESS CARD (if applicable) ---
- BADGE CARD (Time Card)

SAFETY SHOES  N/A

**UNIFORMS:**
- # OF PANTS
- # OF SHIRTS  N/A
- LAB COATS

PERSONNEL CHANGE FORM: ✓
(Original – Sylvia Stropkai – EW, Copy – our file)

POSTED ON COMPUTER: ✓

**ADDED TO:**
- Termination Log (Microsoft Excel) ✓
- Not Eligible Listing ✓


EXHIBIT
Burris #2
1-17-06  JAB

SJ 0017