**E-FILED**
Friday, 09 June, 2006  04:07:28 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| SHARON JACKS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. : 04-2230 |
| | ) | |
| v. | ) | Judge Michael P. McCuskey |
| | ) | Magistrate Judge David G. Bernthal |
| CONAIR CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT CONAIR CORPORATION'S REPLY
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## I.     INTRODUCTION

Plaintiff's response to Conair's Motion for Summary Judgment confirms that all of Conair's essential facts are undisputed.  Of Conair's 41 numbered fact statements, Plaintiff admits 17 outright, and effectively admits another seven by failing to offer any record citations in support of her denials.  Another 15 of Conair's statements are tacitly admitted by Plaintiff's mere assertion that they are immaterial.  Thus, Plaintiff actually controverts only two of Conair's 41 facts but, as set forth below, those facts also are clearly established and uncontradicted.  Plaintiff offers nineteen "Additional Material Facts" but, as also set forth below, they are either non-facts or are clearly immaterial.

Thus, Plaintiff's attempt to ward off summary judgment essentially comes down to two legal theories:  (1) that the Court should disregard Nurse Scott's affidavit as unqualified "expert" testimony or because Conair improperly contacted Nurse Scott, and (2) that Conair unlawfully deprived Plaintiff of an opportunity to cure a "defect" in her medical Certification.  As discussed below, these arguments are devoid of merit and cannot avert judgment for Conair.

## II.    PLAINTIFF'S ADDITIONAL "FACTS" ARE IMMATERIAL

Conair responds as follows to Plaintiff's enumerated paragraphs of "Additional Material Facts":

> 1.    Con-Air Corporation received a fax document from Dr. Kattner on June 6, 2003. (Burris Dep. 60:18-22.) From June 2, 2003 through June 6, 2003 was preliminary approved for FMLA. (Burris Dep. 42:15-21.)

**RESPONSE:** Disputed, but immaterial.   Stephanie Burris, Human Resources Manager from Conair Corporation ("Conair"),[1] testified that the completed FMLA Certification evidentially was faxed to Conair late Friday, June 6, 2003, but that Burris did not see the facsimile until the morning of June 9, 2003. (Burris dep. at 60:18-22; 63:1-23).[2] That Burris received and reviewed the Certification on June 9 actually is undisputed, as reflected in Plaintiff's additional fact No. 3, below.  In any event, when Burris received the Certification is not material since Burris applied it prospectively only.  It also is misleading to suggest that Conair approved Plaintiff for FMLA leave from June 2 through June 6.  Burris explained that during that time, she assumed Plaintiff's absences would be excused by Plaintiff's FMLA medical Certification, but could not make that determination until seeing the completed Certification. (*See, also*, Burris Dep. at 61:10-62:9.) Moreover, under 29 C.F.R. §825.208(e)(2), any "preliminary approval" is immaterial because, upon eventual receipt of the Certification, Conair was obliged to "withdraw" any preliminary approval that was not supported by the Certification.

---

[1]    Plaintiff incorrectly refers to Defendant as "Con-air" throughout her response to Defendant's statement of facts.

[2]    Unless indicated, all citations refer to the pleadings, affidavits, and deposition exhibits attached to Conair's Memorandum in Support of its Motion for Summary Judgment, filed on May 1, 2006 and covered by an index. ~~Also~~ *attached hereto as Exhibit A* ~~and are supplemental~~ *and supplemental references* ~~that~~ *are citations*

2

2.    The form submitted from Dr. Kattner's office indicated that the medical condition began on May 29, 2003, that the duration of the condition was undetermined and that the next office was June 23, 2003. (Burris Dep. 65:11-15.)

**RESPONSE:** Undisputed, but immaterial.    When Plaintiff's husband's medical condition began and the date of his next scheduled office visit are immaterial to whether the Certification authorized FMLA leave for Plaintiff at any time other than when Plaintiff was needed to drive for her husband.

3.    Ms. Burris confirmed the verification of health care provider as attached as Exhibit 12 of the Burris deposition was received by her on June 9, 2003. (Exhibit 2, Burris Dep. 63:15-16.) The Certification states "patient will be seeing pain management for injections and then to physical therapy. (Exhibit 2). The Certification also states that the condition "began 5/29/03" and the "duration was undetermined" but that the "next office visit [was] 6/23/03" (Exhibit 2).

**RESPONSE:** Undisputed, but immaterial for the same reasons as set forth above with regard to "additional fact" no. 2.

4.    In response to the question "leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety or for transportation?" (Burris Dep. Exhibit 12). Dr. Kattner's response was "yes". *Id.* Additionally, Dr. Kattner stated "unable to drive due to pain level and medications." (Burris Dep. Exhibit 12).

**RESPONSE:** Disputed, but immaterial. Plaintiff misquotes the question on the medical Certification form, by omitting an "if" as well as the comma that separates "basic medical needs or safety" from "transportation."    (See, Appendix 2 to Conair's summary judgment memorandum.) Question 8(a) on page two of the form asked, "*if* leave is requested to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical needs or safety, or for transportation?" In answer, Dr. Kattner stated "yes" and "unable to drive due to pain level and medication." The completed Certification did not state that Plaintiff needed to care for or assist her husband at any time *other* than when he

needed to be driven somewhere. The dispute is immaterial, however, because Plaintiff was discharged for failing to report to work even after driving her husband home on June 9, 2003. Plaintiff admits that she delivered her husband home "before dinner" on June 9, 2003, yet did not report for any of her shift which did not end until 12:15 a.m. the next morning. (See, Plaintiff's response to Conair's statement of fact nos. 35, 36).

> 5.      The form was signed by Dr. Kattner. (Burris Dep. 67:9-11).

**RESPONSE:** Undisputed, but immaterial. The fact that Dr. Kattner signed the completed Certification has no bearing on the issues.

> 6.      Kenny Jacks had a serious medical condition as defined by the Family Medical Leave Act. (Burris Dep. 66:7-67:2). Con-Air Corporation is not disputing the serious medical condition suffered by Mrs. Jacks. *Id.*

**RESPONSE:** That Plaintiff's husband had a serious health condition as defined by the FMLA is "undisputed" for purposes of Conair's summary judgment motion *only*. Conair has specifically preserved the issue for trial if necessary. In any event, this additional "fact" should be stricken as it is nothing more than an impermissible legal conclusion, and such conclusions are "nullities" in a statement of facts. *Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2005).

> 7.      Ms. Burris had approved Mrs. Jacks' FMLA leave. (Burris Dep. 69:18-20).

**RESPONSE:** Disputed but immaterial for the reasons set forth in response to additional "fact" no. 1, above.

> 8.      Mrs. Jacks was not required to call in sick on Monday, June 9, 2003. (Burris Dep. 70:14-19).

**RESPONSE:** It is immaterial whether Plaintiff needed to call in "sick" to Conair on June 9, 2003. Plaintiff has admitted that she spoke to Burris hours before her shift on June 9, 2003, and that Burris explicitly instructed her to report that evening. Despite being so advised,

Plaintiff admits that she did not report for any of her evening shift, even though she finished driving her husband from court that afternoon. (See, Plaintiff's Response to Conair's statement of facts nos. 26-28, 33, 35-36.)

      9.    Sharon Jacks told Stephanie Burris that she needed to be off to take care of Kenny Jacks, her husband. (Burris Dep. 73:9-15.)

**RESPONSE:** It is immaterial whether Plaintiff told Burris that Plaintiff felt she needed to be off work continuously to care for her husband. Plaintiff's own subjective beliefs regarding her husband's medical needs are not relevant. The FMLA entitles an employee to be off work to care for a spouse only when, in the medical opinion of the health care provider, the absence is medically necessary to provide needed care to the patient. 29 USC §2613(b)(4)(A). Dr. Kattner and his Certification in this case authorized Plaintiff's absence from work only when she was needed to drive her husband.

      10.    On Tuesday, June 10, 2003, Stephanie Burris terminated Sharon Jacks for "job abandonment". (Burris Dep. 76:20-21; 78:9-13, Exhibit 2); (Jacks Dep. 29:1-4; 77:7-11).

**RESPONSE:** Disputed, but immaterial. Stephanie Burris testified that the term "job abandonment" on a Conair personnel change form represented merely an administrative code indicating that Plaintiff was not eligible for rehire, because Plaintiff had refused to report as instructed for any of her shift on June 9, 2003 (Burris Dep. at 31:22-33:22; 78:14-79:6). However, Burris was clear, and Plaintiff effectively admitted, that Plaintiff was terminated for incurring another attendance "occurrence," which resulted in her third final attendance warning in a single year period, which in turn called for Plaintiff's termination under Conair's attendance policy. (Jacks dep. at 26:19-27:17, 28:11-12, 30:4-10, 50:5-23, 77:71-14; Burris Dep. at 44:10-45:11, 46:3-48:19, 83:11-86:18). In any event, the use of that characterization on a Conair personnel document is immaterial to whether Plaintiff's discharge violated the FMLA as Plaintiff

alleges. Indeed, in Plaintiff's response to Conair's statement of material facts, she claims that her "at will" employment status made even her prior warnings for excessive absenteeism "immaterial" to this action. *See* Plaintiff's response to Conair's statement of facts 5-11.

> 11.    On June 9, 2003, in a telephone conversation with Stephanie Burris, Ms. Burris told Mrs. Jacks that the Certification form authorized Mrs. Jacks to be off to transport Kenny Jacks. (Jacks Dep. 67:22-68:7).

**RESPONSE:** Undisputed, but immaterial. Conair did not discharge Plaintiff for missing work while she was transporting her husband. As discussed in Response No. 4, above, Plaintiff admits that she finished transporting her husband to and from a scheduled court appearance on the afternoon of June 9, 2003, but failed to report to work anytime during her shift that evening, which did not end until 12:15 the next morning.

> 12.    Mrs. Jacks was never notified by Ms. Burris that if she had brought updated forms into her office or got a changed FMLA form, she could have gotten her job back. (Burris Dep. 80:20-81:23).

**RESPONSE:** It is immaterial whether Conair told Plaintiff that the Company might consider her *reinstatement* if she provided the Company a *changed* FMLA medical certification. The FMLA does not require an employer to so inform a discharged employee. Further, the uncontroverted evidence establishes that any such notification would have been futile in this case because Plaintiff already had asked her husband's health care provider, unsuccessfully, to change the Certification she had submitted. (Scott Affidavit at ¶¶13-14.)

> 13.    Ms. Burris never gave Mrs. Jacks the opportunity to provide a corrected FMLA form. (Burris Dep. 80:20-81:23).

**RESPONSE:** Disputed, but immaterial. After recognizing that the medical Certification completed by Dr. Kattner did not support the leave requested by Plaintiff, Burris promptly so advised Plaintiff by telephone. (Jacks dep. at 66:20-68:11; Burris dep. at 72:16-73:8.) Plaintiff then told Burris that Plaintiff would ask the doctor's office to change the medical Certification.

6

(Jacks dep. at 68:4-7, 68:12-19; Burris dep. at 74:10-15.)  However, Plaintiff never submitted a revised certification, and did not even contact Burris again regarding the matter.  (Burris dep. at 79:9-16, 80:21-81:17.)  Further, the doctor's office confirmed to both Burris and Plaintiff that the medical Certification was correct as written, and that Plaintiff's husband only needed transportation assistance and did not require round-the-clock medical care.  (Scott Affidavit at ¶¶6-14, 19; Jacks Dep. at 68:18-70:6; Burris dep. at 68:22-69:6, 69:20-70:9.)  This dispute also is immaterial, however, as the FMLA did not require Conair to give Plaintiff time to secure and submit a changed certification.  Conair was entitled – in fact, obliged – to act on the completed Certification she submitted.

> 14.    Reinstatement was never a topic and it was reasonable for Mrs. Jacks to have understood that she was fired.  (Burris Dep. 82:9-16).

**RESPONSE:**.  It is undisputed that, as of sometime on June 10, 2003, it was reasonable for Plaintiff to have understood that Conair had discharged her for missing more work at a time when the FMLA did not protect her absence.  It is immaterial, however, whether "reinstatement was never a topic," for the reasons stated in Conair's Responses Nos. 12 and 13, above.

> 15.    Stephanie Burris contacted Dr. Kattner's office prior to speaking with Mrs. Jacks.  She did not have Mrs. Jacks' permission to do so.  (Burris Dep. 71:5-23; 72:1-73:18).

**RESPONSE:**  Disputed, but immaterial.  Burris testified that after reviewing Plaintiff's completed Certification on the morning of June 9, 2003, she attempted to contact Plaintiff, and also tried to reach the doctor's office, but had to leave messages for both.  (Burris Dep. 71:1-10, 82:17-83:4.)  Burris further testified that when Plaintiff called her back "after lunch," Burris told her that the Certification only authorized Plaintiff's absence when she needed to transport her husband, and therefore would not support Plaintiff's absence from work that evening.  (Burris Dep. 72:8-73:15.)  Plaintiff then told Burris that she [Plaintiff] would call Dr. Kattner's office to

clarify the Certification.  (*Id.*)  Burris testified that the doctor's office did not return Burris' call

until after this conversation between Burris and Plaintiff.  (Burris Dep. 83:11-15.)  The affidavit

of Dr. Kattner's nurse and its exhibits show that the nurse called Burris only after and *because*

the nurse received a message from Plaintiff *asking* her to do so.  The notes dated 6/9/03, attached

to the nurse's affidavit, state:

> Gail from Foundation got a *call from Mrs. Jacks requesting this office call
> Stephanie Burris at 217-892-8400 at Conair* about the FMLA forms.  Mrs. Jacks
> was asking to be home with her husband 24hours/day and would lose her job if
> not clarified.  Call to above number and Stephanie wanted to know if Mrs. Jacks
> could be gone from work only to transport husband.  Stephanie was told that
> patient could be alone on medication, but not drive.
>
> Call from Mrs. Jacks stating they had been gone most of the day to court, getting
> insurance info, and running around.  *She wanted to know if a call if had been
> made to Stephanie as above.*  Mrs. Jacks was told the form was completed as
> requested and it stands as written.  Mr. Jacks could stay home alone of meds
> prescribed and she could transport him to appts since he should not drive.

Scott Aff., ¶¶10-13.  Thus, the uncontroverted facts establish that it was actually Plaintiff who

caused the clinic to contact Conair.  In any event, it is immaterial who brought about the contact,

since Conair did not discuss medical facts with the clinic, but only the words on the Certification.

>    16.    There is no dispute the Certification was complete and signed by
> Dr. Kattner.  (Burris Dep. 67:9-16).

**RESPONSE:**   Undisputed.   It is one of Conair's summary judgment facts that the

Certification signed by Dr. Kattner was complete and authorized Plaintiff to take leave only

when Plaintiff was needed to drive her husband to appointments.

>    17.    Dr. Fletcher was Kenny Jacks' treating physician beginning June
> 24, 2003 relating to his May 29, 2003 injury.  (Affidavit of Dr. Fletcher ¶¶ 1, 2).

**RESPONSE:**   Immaterial.   Plaintiff's employment was terminated on June 10, 2003,

based on the Certification she submitted by Dr. Kattner who then was her husband's treating

physician.  Whether Dr. Fletcher treated Plaintiff's husband beginning weeks later is immaterial.

Indeed, because Plaintiff's husband did not even begin seeing Dr. Fletcher until two weeks *after* Plaintiff's termination, Dr. Fletcher could not have provided a changed or different medical certification at any time relevant to this case.

> 18. Dr. Fletcher regularly certifies patients, employees and spouses of patients for employers under the Family Medical Leave Act.

**RESPONSE**: Immaterial. The qualifications of a doctor who was not the health care provider for Plaintiff's husband between June 2, 2003 and June 9, 2003 are immaterial to this action.

> 19. Dr. Fletcher states that based on the condition of Kenny Jacks' work injury, the care and treatment that he provided and a June 6, 2003 MRI, Dr. Fletcher would have provided Certification for Mrs. Jacks to care for her husband on a full-time basis. (Affidavit of Dr. Fletcher ¶¶ 5, 6).

**RESPONSE:** Immaterial. This "fact" also should be stricken as sheer speculation. Testimony regarding what a different doctor might have done, who was not the health care provider at the time at issue, is clearly immaterial and inadmissible. Because Dr. Fletcher did not begin treating Plaintiff's husband until June 24, 2003, Dr. Fletcher could not have submitted *any* timely FMLA medical certification to Conair, because under the FMLA, Plaintiff had only 15 days after obtaining the blank certification on June 2, 2003 to submit a completed certification. *See* 29 CFR 825.311 (a leave is not FMLA protected if the employee fails to submit an initial completed certification within the 15-day time frame).

## III. ARGUMENT

### A. NURSE SCOTT'S AFFIDAVIT IS NOT IMPROPER EXPERT TESTIMONY

Plaintiff is clearly wrong in urging that Nurse Scott's affidavit be stricken under Fed R. Evid. 702. Nurse Scott's affidavit essentially recites merely that (1) in June 2003 she was Dr. Kattner's "phone nurse;" (2) on June 9, 2003 she received a message that Plaintiff wanted her to

phone Conair about Plaintiff's FMLA medical Certification; and (3) she then confirmed to both Conair and Plaintiff what the medical Certification stated (Plaintiff was needed to care for her husband only when he needed to be driven somewhere) and that it would not be broadened. That testimony does not call upon any medical expertise. It is basic fact testimony about the circumstances under which Nurse Scott spoke to Plaintiff and Conair and what she told Plaintiff and Conair regarding the medical Certification. Plaintiff offers no authority, nor could she, that such testimony must satisfy expert testimony standards under Rule 702.

## B.  NURSE SCOTT'S INVOLVEMENT DID NOT VIOLATE THE FMLA

Plaintiff alternatively seems to argue that Conair cannot rely on Nurse Scott's affidavit because an FMLA regulation indicates that only "a health care provider representing the employer" may contact an "employee's health care provider," and only "with the employee's permission," to clarify an FMLA medical certification. That regulation clearly was not violated in this case, however, and in any event, Conair is entitled to summary judgment.

In the first place, as Plaintiff herself is at pains to point out at pages 13-14 of her Response, Nurse Scott is not a "health care provider" within the meaning of the FMLA, particularly where her role was simply to handle telephone communications with patients' families and their employers. See, 29 C.F.R. 825.118. Hence the FMLA regulations in no way precluded Conair from talking to Nurse Scott. Furthermore, Nurse Scott's affidavit makes clear that her discussions with Conair took place when *Nurse Scott contacted Conair*, based on Plaintiff's message *asking* her to do so:

> On June 9, 2003, I received notice that Mr. Jacks' wife, Sharon Jacks, had telephoned the clinic asking us to contact her employer, Conair, regarding an FMLA certification form relating to the care of her husband. ... As reflected in my notes of June 9, 2003, I contacted Ms. Stephanie Burris, a human resources representative at Conair, ...

10

Scott aff. ¶¶ 10-11. Plaintiff has not contradicted that she asked the clinic to phone Conair. Thus, it is *undisputed* that Nurse Scott did so at Plaintiff's request, thereby establishing the "employee's permission" that would be required by the FMLA regulation.

Moreover, apart from relating her conversation with Conair, Nurse Scott's affidavit establishes that the clinic rejected Plaintiff's request to modify the Certification. That communication is totally unaffected by 29 C.F.R. 825.118, and demonstrates that Conair did not deny Plaintiff a chance to secure such a modification.

In any event, Conair's motion for summary judgment is compelling even without Nurse Scott's affidavit, and must be granted even if Conair's conversation with Nurse Scott was a technical FMLA violation. Before talking to Nurse Scott, Conair already understood the Certification as not authorizing Plaintiff to miss work except when she was needed to drive her husband. Nurse Scott merely confirmed Conair's understanding. Because Plaintiff thus suffered no compensable harm as a consequence of Conair's conversation with Nurse Scott, Conair remains entitled to summary judgment. *See, Harrell v. U.S. Postal Service*, 415 F.3d 700, 714-15 (7th Cir. 2005) (affirming summary judgment for employer where plaintiff's claim that the employer improperly contacted his provider "caused him no injury"). As the U.S. Supreme Court has made clear, Plaintiff has no claim under the FMLA unless she can establish not only that Conair violated the statute but also that she was "prejudiced by the violation." *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S.Ct. 1155, 1161 (2002). Nurse Scott's uncontradicted testimony proves that Plaintiff incurred *no* harm. Indeed, it shows that even giving Plaintiff an opportunity to get the Certification changed, which the FMLA did not require, would have been fruitless in her case.

## C.    PLAINTIFF'S RESPONSE CORROBORATES THAT CONAIR IS ENTITLED TO JUDGMENT

Plaintiff's Response to Conair's motion does not merely fail to assert grounds that warrant a denial of the motion.  Plaintiff's Response effectively admits all of Conair's summary judgment facts.  It unequivocally admits Conair's statements of fact nos. 1, 3, 4, 13, 14, 16, 18, 20, 22, 24-28, 33, 35 and 36.  In addition, it effectively admits Conair's statements nos. 2, 12, 15, 19, 23, 37 and 38, merely quibbling with matters beyond those statements and, in any event, failing to support its denials with any citations to the evidentiary record.  *See* L.R. 7.1(D)(2)(b)(2); *Burwell v. Pekin Community High School Dist. 303,* 213 F. Supp. 2d 917, 922 (C.D. Ill. 2002).[3]  Plaintiff also tacitly admits Conair's statements 5-11, 17, 21, 29-32, 40 and 41, by merely arguing that they are immaterial but not denying that they are factual.

Thus, only statements 34 and 39 of Conair's facts even arguably are disputed by Plaintiff, and even in those instances her denials are flatly contrary to the record.  In response to Statement 34, Plaintiff denies that Nurse Scott's affidavit indicates that Scott told Plaintiff that Scott had confirmed certain information with Dr. Kattner.  Notably, Plaintiff does *not herself deny* that Scott told her that; she contends only that Scott's affidavit fails to support the assertion.  But Paragraph 14 of Scott's affidavit states that, on June 10, 2003, "I again told Ms. Jacks that *upon review with Dr. Kattner*, her husband did not require full-time care.  ..."  (Emphasis added.)  Thus, Nurse Scott's uncontradicted testimony *does* establish what she told Plaintiff.

In response to Conair's Statement 39, Plaintiff asserts that Stephanie Burris nowhere testified that Plaintiff would not have been discharged if Plaintiff had reported for work on June

---

[3]    Plaintiff contests statements 19 and 23 merely because of the copy of the Certification referred to, which does not affect the facts asserted in those statements.

9, 2003 after she finished driving her husband home from court. Again, Plaintiff is wrong. Ms. Burris testified that she did not initiate Plaintiff's discharge on June 9 because Plaintiff "could have arrived anytime that night." She explained that, since Plaintiff "still had an opportunity to arrive at work [,] I had to wait 'til I came in the next day to check the time clock to see if she had come in at work." (Burris dep. at 76:7-8 and 77:1-5.) Ms. Burris even checked with Plaintiff's supervisor on June 10 to confirm that Plaintiff had not shown up the previous evening. (Burris dep. at 77:13-23.) In short, it is established without contradiction that Conair discharged Plaintiff only after determining that she had failed to report for any of her shift on June 9, 2003.

Thus, *all* of Conair's summary judgment facts are admitted or shown to be supported in the record without contradictory evidence. It follows that Conair's facts must be taken as true for purposes of Conair's motion, and that Conair is entitled to judgment for the reasons spelled out in its opening memorandum and in its response to Plaintiff's cross motion.

Plaintiff is wrong in continuing to argue that Conair owed her a chance to cure "defects" in her medical Certification. The Certification was neither defective nor incomplete, and Conair promptly notified Plaintiff that it did not support her request for round-the-clock leave. That is all that the law required. *Stoops v. One Call Communications*, 141 F.3d. 309, 313 (7th Cir. 1998) (an employer satisfies its FMLA obligations when it notifies an employee that a leave request is denied based on a complete but "negative" certification).

Similarly, Plaintiff cannot overcome summary judgment through her affidavit from Dr. Fletcher. Dr. Fletcher did not and could not have submitted a timely medical certification in this case because he did not even begin treating Plaintiff's husband until two weeks after Plaintiff's termination and more than 15 days after Conair gave Plaintiff the Certification to complete.

13

Under 29 CFR 825.311, Plaintiff was not entitled to any more than those 15 days to submit the completed form.  Thus, Dr. Fletcher's affidavit and certification are wholly ineffectual.

Indeed, it is noteworthy that, even as of Plaintiff's November 19, 2003 correspondence to Conair, more than two months after her discharge, Plaintiff was *still* relying on *Dr. Kattner's* Certification.  Only now, when faced with summary judgment, does Plaintiff attempt to offer a new certification.  This strategy has been expressly rejected by the Seventh Circuit in *Aubuchon v. Knauf Fiberglass, GMBH*, 359 F.3d 950, 953 (7th Cir. 2004) (an employee cannot "mousetrap" an employer by submitting a medical opinion stating grounds for a leave request that were never communicated to the employer).  *See, also, Stoops*, 141 F.3d at 314 (sufficient medical evidence must come from the employee in time to "save his job, not during a subsequent lawsuit").

## IV.   CONCLUSION

Plaintiff has offered absolutely nothing to overcome Conair's conclusive evidence establishing that Conair is entitled to summary judgment in its favor.  Therefore, as set forth above, and in Conair's opening memorandum and its response to Plaintiff's cross motion, Conair respectfully requests that the Court grant it judgment on Plaintiff's entire Complaint, because the material facts are undisputed and establish that Conair is entitled to judgment as a matter of law.

Respectfully submitted,
CONAIR CORPORATION

Date:  <u>June 9, 2006</u>          By:     <u>*s/ Kerry Lin Davidson*</u>
Kerry Lin Davidson Bar Number: 6277341
Attorney for Defendant
Meckler Bulger & Tilson LLP
123 North Wacker Drive
Chicago, Illinois  60606
Tel:    312/474-7900
Fax:    312/474-7898
email:  kerry.davidson@mbtlaw.com

N:\4161\pleading\REPLY-MotSumJdgmnt.doc

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS


### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2006, I electronically filed **Defendant Conair Corporation's Reply In Support Of Its Motion For Summary Judgment** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to:  David A. Kleczek, Kleczek Law Offices, 321 NE Madison, Peoria, Illinois  61603.


By:     _s/Kerry Lin Davidson_
        Kerry Lin Davidson
        Meckler Bulger & Tilson LLP
        123 North Wacker Drive
        Chicago, Illinois  60606
        Tel:    (312) 474-7900
        Fax:    (312) 474-7898

N:\4161\pleading\COS-ReplyMotSumJdgmnt.doc