UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

|  |  |
|---|---|
| SHARON JACKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 04-2230 |
| ) | |
| CONAIR CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**OPINION**

On October 26, 2004, Plaintiff Sharon Jacks filed a complaint against Defendant Conair Corporation alleging a claim under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 et seq. On May 1, 2006, Conair filed a Motion for Summary Judgment (#35). On the same day, Jacks also filed a Motion for Summary Judgment (#37). The matters are now fully briefed, and for the reasons that follow, Conair's Motion for Summary Judgment is DENIED and Jacks' Motion for Summary Judgment is also DENIED.

FACTS

Conair Corporation is engaged in the manufacture of personal care and beauty products and operates a facility in Rantoul, Illinois. Sharon Jacks was employed at Conair as a machine operator. During her employment, Jacks worked second shift with hours of 3:45 p.m. to 12:15 a.m. from May 24, 2001, through June 9, 2003. At that time, Conair terminated Jacks' employment. Conair asserts Jacks was terminated under its attendance policy. The attendance policy stated that "regular and

punctual attendance by all employees is an essential part of responsible employment" and indicated employees failing to meet attendance standards were subject to progressive discipline, including termination. The attendance policy provides that an employee receiving three final warnings regarding attendance within a one-year period would be terminated. Furthermore, there is an "occurrence" if an employee is absent for even less than a full day. The attendance policy states if there are two occurrences during any consecutive 12 month period, the employee receives a verbal warning. A third occurrence in the 12 month period results in a written warning. A fourth occurrence results in a final warning, and five occurrences in the 12 month period results in termination. Jacks received and signed final warnings for absenteeism on December 18, 2002, and April 23, 2003. On May 5, 2003, Jacks signed another written (although not final) warning for an attendance occurrence. The May 2003 warning reminded Jacks that if she accrued a fifth occurrence or a third final warning within the 12 month period, she would be terminated.

Jacks testified in deposition that on May 29, 2003, her husband Kenny Jacks hurt his back. According to Jacks, on the morning of June 2, 2003, she drove Kenny to a clinic in Rantoul because his back was hurting. Jacks then drove Kenny to Provena Covenant Medical Center and arrived at approximately 2 p.m. Jacks did not report to work that evening, but contacted Stephanie Burris, the Human Resource Manager at Conair. Jacks informed Burris that she would need to be off work to care for her husband. As a result, Burris told Jacks to pick up a medical certification form at work and take it to Kenny's physician for completion. Jacks did not return to work from June 2 through June 6, 2003. Burris treated this absence as preliminarily excused under the FMLA pending receipt of certification from Kenny's doctor. Jacks did not have any further communication with Burris that week. On June 5, 2003, Jacks drove Kenny to Bloomington, Illinois to see Dr. Keith Kattner. Jacks took with her the FMLA medical certification form she received from Conair.

Jacks completed the employee portion of the medical certification form while at Dr. Kattner's office. The completed certification was faxed to Conair late in the day on Friday, June 6, 2003, but Burris first saw the fax on the morning of Monday, June 9, 2003. The form was signed by Dr. Kattner. In answer to the question "If leave is required to care for a family member of the employee with a serious health condition, does the patient require assistance for basic medical or personal needs or safety, or for transportation?", the document indicates, "Yes." In the same area under the question, the following is written, "Unable to drive due to pain level and medication." The form further indicated the duration of the condition was undetermined and the next office visit was scheduled for June 23, 2003. The certification also states that Kenny "will be seeing pain management for injections and then to physical therapy."

On the morning of June 9, 2003, Burris attempted to phone Jacks to discuss the FMLA certification. Specifically, Burris intended to tell Jacks the certification indicated Jacks may need to miss work only when she needed to drive Kenny. Burris left a message when Jacks failed to answer the phone. On June 9, 2003, Kenny was scheduled to appear in Champaign County Circuit Court. Jacks testified she drove Kenny to the court appointment which was at either 10:00 a.m. or 1:00 p.m. While Jacks was at the courthouse, she phoned Burris regarding the FMLA paperwork submitted to Burris. According to Burris, this phone call happened before 1:00 p.m. on June 9, 2003. During the phone call, Burris informed Jacks that the certification did not indicate she qualified for leave to care for Kenny full-time, but only when she needed to transport him. Burris therefore informed Jacks that she would need to report to work as usual. Jacks informed Burris that she wanted to be off work to care for Kenny, so Jacks told Burris she would ask Dr. Kattner's office to change or clarify the medical certification. Jacks called Dr. Kattner's office and spoke with the nurse, but did not remember the details of the conversation. Burris also called and spoke to Dr. Kattner's nurse for the purpose of

clarifying the information on the certification form. The nurse who answered patient phone calls at Dr. Kattner's office was Martha Jo Scott. Burris asked Scott the meaning of the notation, "Unable to drive due to pain level and medication," but did not ask for any medical information regarding Kenny. Nurse Scott informed Burris that Kenny required transportation from his wife, but not full-time care. Burris again phoned Jacks and told her that Dr. Kattner's office had confirmed Jacks did not need to provide full-time care for Kenny. As a result, Burris informed Jacks that she needed to report to work later that day.

While Jacks indicated she returned home from the courthouse before dinner, she did not report for any portion of her shift on June 9. As a result, Jacks' employment with Conair was terminated. The reason given for the termination was the accrual of a third final warning in a one year period as a result of her failure to report to work on June 9. Jacks was not terminated until June 10 because Burris was waiting to see if she would show up for any part of her shift on June 9. On June 10, 2003, Jacks contacted Dr. Kattner's office regarding the FMLA form. Nurse Scott again refused to change the document. Jacks has presented the affidavit of Dr. David Fletcher to this court, who has been treating Kenny since June 24, 2003. He indicates in his affidavit that he would have provided FMLA certification indicating Jacks was needed on a full-time basis to care for Kenny.

## ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, the court must decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. American Hoechst Corp., 24 F.3d 918, 920

(7th Cir. 1994). In reaching this decision, the court must consider the evidence in the light most favorable to the party opposing summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. Jakubiec v. Cities Serv. Co., 844 F.2d 470, 473 (7th Cir. 1988).

Jacks asserts that Conair interfered with her substantive rights under the FMLA by terminating her employment. Under the FMLA, an eligible employee is entitled to a total of 12 workweeks of leave during any 12 month period "[i]n order to care for the spouse . . . of the employee, if such spouse . . . has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). Interference by an employer with the exercise of this right is unlawful. 29 U.S.C. § 2615(a)(1). Prior to giving this leave, an employer may require an employee provide a certification from the health care provider of the spouse which includes "a statement that the eligible employee is needed to care for the . . . spouse . . . and an estimate of the amount of time that such employee is needed to care for the . . . spouse." 29 U.S.C. § 2613(a) & (b)(4)(A). It is undisputed in this matter that Conair terminated Jacks because she was absent from work during a time in which Jacks asserts she was caring for her husband. Therefore, the issue presented to this court is whether Conair followed the procedures set forth under the FMLA and properly terminated Jacks based upon the certification she provided.[1]

Conair asserts that Jacks cannot establish her entire absence on June 9, 2006, was due to a qualifying reason under the FMLA because the certification form completed by her husband's health care provider indicated that the only care Jacks' husband required was for transportation. Therefore, according to Conair, the certification received from Kenny's health care provider was a "negative certification" allowing Conair to deny leave to Jacks under the FMLA. Conair is correct that "[w]here

---

[1] There is no dispute that Conair is a covered employer or that Jacks is a covered employee. Furthermore, Conair has stipulated for purposes of the motion for summary judgment that Kenny suffered from a serious health condition.

an employer properly requests a physician's certification under the FMLA and that certification indicates the employee is not entitled to FMLA leave, the employer does not violate the FMLA by relying upon that certification in the absence of some overriding medical evidence." Stoops v. One Call Communc'ns Inc., 141 F.3d 309, 314 (7th Cir. 1998). However, Jacks argues the certification was not a "negative certification." Rather, Jacks asserts the certification was at worst incomplete.

Under the FMLA, a certification is "sufficient if it states: (1) the date on which the serious health condition commenced; (2) the probable duration of the condition; (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition; [and] (4) . . . a statement that the eligible employee is needed to care for the . . . spouse . . . and an estimate of the amount of time that such employee is needed to care for the . . . spouse." 29 U.S.C. § 2613(b). Pursuant to the regulations interpreting the FMLA, an "employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. § 825.305(d). "An incomplete certification is tantamount to an insufficient or inadequate certification or a certification that does not provide the information requested by the employer." Poteet v. Potter, 2005 WL 1115805 at *21 (S. D. Ind. 2005).

Conair argues that the certification obtained by Jacks is similar to that obtained in Stoops, where the court found the certification obtained by the employee was insufficient to sustain leave under the FMLA, justifying the termination of the plaintiff employee for excessive absences. However, the employee's physician in Stoops certified that his condition did not require him to miss work. Stoops, 141 F.3d at 313. The certification in the instant case is less clear.[2] The certification regarding Jacks' request for leave indicates Kenny suffers from a serious health condition and indicates

---

[2] Conair argues any ambiguity regarding the certification was cleared up when Burris called Nurse Scott. However, Conair concedes Nurse Scott is not a health care provider as defined by the regulations. See 29 C.F.R. 825.118.

leave is required to care for him.  Therefore, this court cannot find the certification to be a "negative certification" as a matter of law.

However, neither is summary judgment warranted in favor of Jacks on this issue.  The question of whether the statement in Jacks' certification which indicates Kenny is "[u]nable to drive due to pain level and medication" rendered the certification complete but unsupportive of the leave request or rendered it inadequate or incomplete requiring Conair to give Jacks an opportunity to cure the deficiency presents a material question of fact.  Shtab v. Greate Bay Hotel and Casino, Inc., 173 F. Supp. 2d 255, 265 (D. N. J. 2001); see also Sorrell v. Rinker Materials Corp., 395 F.3d 332, 337-38 (6th Cir. 2005).   Accordingly, this case must proceed to trial.


IT IS THEREFORE ORDERED:

(1) Defendant's Motion for Summary Judgment (#35) is DENIED.

(2) Plaintiff's Motion for Summary Judgment (#37) is DENIED.

(3) This matter remains set for a final pretrial conference by personal appearance at 2:30 p.m., on August 31, 2006, and a bench trial beginning at 9:00 a.m., on September 11, 2006.

ENTERED this 23rd day of June, 2006

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE